STATE OF NEBRASKA, APPELLEE, V. 1987 JEEP WAGONEER VIN 1JCMT7543HT161853, APPELLEE, ENZO FLORIDIA, INTERESTED PARTY, APPELLANT, CHRYSLER CREDIT CORPORATION, INTERESTED PARTY, APPELLEE.

488 N.W.2d 546

Filed September 4, 1992.　No. S-89-864.

James Martin Davis for appellant.

Robert M. Spire, Attorney General, and Barry Waid for appellee State.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Enzo Floridia appeals a district court order forfeiting to the State the 1987 Jeep Wagoneer VIN 1JCMT7543HT161853 he was driving when Omaha police stopped him and found cocaine in a plastic baggie in the left front pocket of his pants. We affirm the judgment of the district court for Douglas County.

In executing a search warrant of Floridia's person, a police

officer found 3.3 grams of cocaine on Floridia. The evidence reflects that 3.3 grams is equivalent to one-eighth of an ounce, which, in street terms, is referred to as an "eight ball." Floridia testified that the cost of cocaine was about $100 per gram. An officer testified that an eight ball is a quantity that is normally bought and sold.

The trial court found that the Wagoneer was used to transport cocaine with intent to deliver and that such use subjected the vehicle to forfeiture under Neb. Rev. Stat. § 28-431 (Reissue 1989). The court ordered that the Wagoneer be placed in official use by the Omaha Police Division for up to 1 year and by other law enforcement agencies for up to 1 additional year. The court also ordered that when there was no further official use for the Wagoneer or at the conclusion of 2 years, whichever was sooner, the Wagoneer should be sold. The proceeds of the sale were ordered paid to the Douglas County treasurer, and the court ordered that from those proceeds Chrysler Credit Corporation should be paid the amount of its $1,913.35 lien, plus interest to the date of payment. The parties stipulated that Chrysler Credit Corporation had acquired its lien in good faith, that it had not used the vehicle in violation of the law, and that it had no knowledge that the vehicle was being or would be used in violation of the law.

Floridia testified that he had never sold cocaine. He said he purchased for his own use the cocaine police seized from him. Ten days before the execution of the search warrant, law enforcement officers seized garbage at the curb in front of Floridia's Omaha residence. During an inventory of the garbage, a handwritten note was found. On the front of the note was the name "Enzo," and on the back were the words "Would it be possible to get me a '8' ball in the *very near future* call me." A second handwritten note, contained in an envelope addressed to "Enzo," was from Stephanie Nelson, Floridia's live-in fiancee. This note, which was also found in the garbage seized in front of Floridia's home, states: "Enzo, I sold the rest above the stereo. I didn't want it around. I will talk to you in the morning. Stephanie."

During the execution of a search warrant at the defendant's residence shortly before Floridia was stopped, police found a

Playboy magazine. Square pieces of paper were cut from pages of the magazine in a manner consistent with those pieces used for making cocaine packets, commonly referred to as "snow seals." Above Floridia's stereo, police seized a glass mirror, a razor blade, a grinder, and a sifter, all of which appeared to have cocaine residue on them. Also found in Floridia's home were baggies, white residue, some straws with residue, and some manufactured items, one of which was a snorting instrument that carried the name "Hooter." An officer working in the Omaha Police Division's narcotics unit testified that a grinder is used to "break up chunks of cocaine and help it mix in with cutting agents. It's then sifted through a screen and the grinder." The officer testified that in his contacts with users of cocaine he had never found a grinder, but that he had frequently found a grinder when he had come in contact with individuals who sell cocaine.

The district court for Douglas County found that at the time it was seized, the Wagoneer was being used in violation of § 28-431, which in relevant part provides:

(1) The following shall be seized without warrant by an officer of the Division of Drug Control or by any peace officer and the same shall be subject to forfeiture . . . . (f) all conveyances including, but not limited to . . . vehicles . . . which are used, or intended for use, in *transporting* any controlled substance with intent to manufacture, distribute, *deliver*, dispense, export, or import such controlled substance in violation of [Nebraska's drugs and narcotics law, Neb. Rev. Stat. ch. 28, art. 4 (Reissue 1989)].

(Emphasis supplied.)

The trial court found that the Wagoneer "was used for transporting cocaine with the intent to deliver in violation of §28-416 Neb. Rev. Stat '43, Reissue 1985" and that "the use occurred in Douglas County, Nebraska." After the close of all the evidence and after closing arguments, the following exchange took place:

[Floridia's counsel]: I would like to object to this forfeiture statute in question because it places the burden of proof on the defendant in this case, and I think

constitutionally that is defective. So that's just for the record.

[The Court]: The trial which you participated in has been completed before we have heard that. That objection is overruled.

In his appeal to this court, Floridia assigns as error (1) that the evidence was insufficient to support a finding that Floridia violated § 28-431 and (2) that the district court erred as a matter of constitutional law by placing the burden of proof upon Floridia and not upon the State.

We have held that § 28-431 is criminal in character. *State v. One 1987 Toyota Pickup*, 233 Neb. 670, 447 N.W.2d 243 (1989). In criminal cases, circumstantial evidence is to be treated the same as direct evidence, and the State, upon review, is entitled to have all conflicting evidence, direct and circumstantial, and the reasonable inferences which can be drawn from the evidence viewed in its favor. *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992).

Section 28-431(4) requires the State to prove beyond a reasonable doubt that the property was used in violation of chapter 28, article 4. Floridia argues that at the time of the vehicle's seizure, there was no indication regarding his *intent* to "manufacture, distribute, deliver, dispense, export, or import" the cocaine in violation of § 28-431(1)(f).

The intent involved in an actor's conduct is a mental process and may be inferred from the conduct itself; the actor's language, if any, in reference to the conduct; and the circumstances surrounding an incident. *State v. Rokus*, 240 Neb. 613, 483 N.W.2d 149 (1992).

A search of Floridia's home revealed an extensive collection of drug paraphernalia, including a grinder. A police officer testified that he had never seen a grinder in the possession of one who merely uses cocaine, but that it is a frequent occurrence to find one in the possession of a seller of cocaine. A fact finder could infer that a note written by Floridia's fiancee and an unsigned note both indicate Floridia was involved in the sale of cocaine. From the evidence adduced by the State and the reasonable inferences which could be drawn from the evidence, a fact finder could find beyond a reasonable doubt that Floridia

had cocaine in his possession while driving the Wagoneer and that he had the requisite intent to deliver the cocaine in violation of § 28-431(1)(f). Floridia's first assignment of error is without merit.

We need not substantively address Floridia's second assignment of error because it was not properly raised in the trial court. The trial had been completed when Floridia objected to the constitutionality of the forfeiture statute. That was too late. It is well settled that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion before a tribunal having jurisdiction to determine it. *ConAgra, Inc. v. Cargill, Inc.*, 223 Neb. 92, 388 N.W.2d 458 (1986). A constitutional question should be raised at the earliest opportunity. *Id.* Generally, a constitutional question not properly raised in the trial court will not be considered on appeal. *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991); *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990). In the absence of plain error, when an issue is raised for the first time in an appellate court, the issue will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted for disposition in the trial court. *State v. Dixon, supra.*

In its memorandum, the trial court found that if Floridia had contemplated that the seized cocaine was only for his personal use, he had the opportunity to leave it at his home, but having arrived at home after he purchased the cocaine, he departed with the 3.3 grams and "actually gives no coherent explanation of the further transport." The court further found, "The other evidence of dealing or delivering is strong and unrefuted as I observed the witnesses, and I have no difficulty in concluding that the concaine [sic] was being transported for delivery as that term is defined for these purposes." From the court's memorandum, it is obvious that the trial court relied upon the State's evidence in finding that Floridia's Wagoneer should be forfeited to the State.

Because the constitutionality of the forfeiture statute is not properly before us, and because it is apparent that the court relied upon the State's evidence to forfeit Floridia's Wagoneer, we need not discuss further Floridia's second assignment of

error.

The judgment of the trial court is affirmed.

AFFIRMED.