STATE OF NEBRASKA, APPELLEE, V. ONE 1985 MERCEDES 190D
AUTOMOBILE, NEBRASKA LICENSE 2–S153, VIN
WDBDB22C6FF120226, APPELLEE, AND KEVIN BALLARD,
INTERESTED PARTY, APPELLANT.

526 N.W.2d 657

Filed February 3, 1995.   No. S–93–519.

Patrick T. O'Brien, of Bauer, Galter, O'Brien, Allan & Butler, for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee State.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

FAHRNBRUCH, J.

Kevin Ballard appeals a district court order forfeiting to the State his 1985 Mercedes Benz 190D, vehicle identification number WDBDB22C6FF120226, after Lincoln police stopped it and found crack cocaine in the backseat.

It is inherent in the district court's order that the trial judge found, beyond a reasonable doubt, that Ballard's Mercedes was used or was intended for use to facilitate a violation of chapter 28, article 4, of the Nebraska Revised Statutes, which addresses certain illegal drug activities, and that Ballard had knowledge of such use or intended use prior to the time the police stopped and searched the vehicle.

Ballard appealed the forfeiture to the Nebraska Court of Appeals. The State asked to bypass that court and have this case decided by this court. We granted the State's request.

We affirm the judgment of the district court for Lancaster County.

## ASSIGNMENTS OF ERROR

Summarized and restated, Ballard's assignments of error claim that the district court erred in (1) finding there was sufficient evidence to find beyond a reasonable doubt that the motor vehicle was used or intended for use to facilitate a violation of chapter 28, article 4, and (2) ordering a forfeiture disproportionate to the alleged underlying offense.

## STANDARD OF REVIEW

Appellate review concerning the sufficiency of the evidence to forfeit a motor vehicle to the State under Neb. Rev. Stat. § 28-431 (Reissue 1989) should not be treated differently than review of the sufficiency of the evidence in a criminal case. See, *State v. 1987 Jeep Wagoneer*, 241 Neb. 397, 488 N.W.2d 546

(1992); *State v. One 1987 Toyota Pickup*, 233 Neb. 670, 447 N.W.2d 243 (1989).

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994); *State v. Russell*, 243 Neb. 106, 497 N.W.2d 393 (1993).

On a claim of insufficiency of the evidence, an appellate court will not set aside a finding of guilty in a criminal case where the finding is supported by relevant evidence; only when the evidence lacks sufficient probative force as a matter of law may the appellate court set aside a finding of guilty as unsupported by the evidence beyond a reasonable doubt. See, *Russell, supra*; *State v. Martin*, 242 Neb. 116, 493 N.W.2d 191 (1992).

In the forfeiture case under review here, the evidence is both direct and circumstantial. In a criminal case, when there is both circumstantial and direct evidence, the circumstantial evidence is to be treated the same as direct evidence, and upon review, the State is entitled to have all conflicting evidence, both direct and circumstantial, and the reasonable inferences which can be drawn from the evidence viewed in its favor. *1987 Jeep Wagoneer, supra*; *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992). Cf., *State v. Skalberg, ante* p. 150, 526 N.W.2d 67 (1995); *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994) (both cases holding that *when only circumstantial evidence exists* to support a criminal conviction and the evidence is reasonably susceptible of two interpretations, one of guilt and the other of nonguilt, and neither inference is stronger, for the purpose of determining whether the State has made a prima facie case, and for that purpose only, the inferences are to be viewed most favorably to the accused).

## FACTS

When the properly admitted relevant evidence is viewed most

favorably to the State, the facts of the case are as follows:

On November 21, 1992, at approximately 3:15 p.m., Jon Sundermeier, a Lincoln Police Department narcotics officer, was notified of a Crimestoppers telephone call advising police that a newer forest-green Mercedes Benz with tinted windows and Nebraska license plate number "2–5152 [sic]" was en route from Lincoln to Omaha. The caller said the vehicle was occupied by a dark-complected male named "Ballard" and a younger, light-complected male named "Chris." The caller further related that the occupants had $2,000 to purchase crack cocaine which they intended to obtain in Omaha and bring back to Lincoln to sell.

Lincoln police officers spotted Ballard's Mercedes shortly after 9 p.m. traveling westbound from Omaha toward Lincoln. The license plate carried number 2–S153, which was virtually the same number supplied by the Crimestoppers caller. The police attempted to stop the vehicle as it was coming into Lincoln on Cornhusker Highway about one-quarter mile east of Highway 77. The driver did not stop the Mercedes immediately. However, he did decrease its speed. Eventually, the driver turned the Mercedes north onto Highway 77 and stopped alongside that highway just north of Cornhusker Highway.

There were three occupants in Ballard's Mercedes when it was stopped. Ballard was sitting in the front passenger seat, Chris Gant was driving, and Ronald Hoskins occupied the backseat. The three men were removed from the vehicle and patted down. A loaded .25–caliber semiautomatic pistol was found in Hoskins' pocket. Sundermeier found a warm crack cocaine pipe on the ground a few feet from where Ballard was standing after he was removed from the Mercedes. There was burnt residue on both ends of the pipe.

Police searched Ballard's vehicle and found an ammunition box containing a few loose rounds of ammunition. The police also found an empty plastic sandwich baggie inside a brown paper sack in the backseat of the Mercedes. A similar baggie was found stuffed between two sections of the backseat where Hoskins had been sitting. This baggie contained a large, single rock of suspected crack cocaine. Later testing disclosed that the rock consisted of 5.67 grams of crack cocaine. A drug detection

search dog "hit" solely on the front seat passenger area of Ballard's car where Ballard had been seated.

During the roadside investigation, police officers intercepted several incoming calls to a cellular telephone seized from the backseat of Ballard's vehicle. Each caller asked to speak to "Ronald." Sundermeier testified that one caller indicated he knew Ronald was coming to Lincoln and would have crack cocaine and that the caller had an individual with him who wanted to buy crack cocaine. The vehicle was taken to a police garage, where it was more thoroughly searched. There, police found rolling papers and trace amounts of marijuana.

Ballard has not questioned the legality of the police's stopping his vehicle or their search of it. However, in the district court, he did contest the forfeiture of his Mercedes to the State, and he did seek to have it returned to him.

On November 23, 1992, Ballard went to the Lincoln police station. In response to a suggestion by police that he had knowledge that crack cocaine was in his vehicle, Ballard said:

> I really, sir[,] maybe I probably, I probably, *I probably figured he [Hoskins] had some, I didn't know he had that much* but I didn't know what he, I don't, yea *I figured he probably was gonna sell it, but I didn't care about that, that, you know I figured that's his business, I didn't care about, I was gonna drop him off and I was goin['] home.*

(Emphasis supplied.) Ballard was not in custody at the time he made the response.

On November 25, 1992, the State, pursuant to § 28-431, filed a petition in the district court for Lancaster County for forfeiture and disposition of Ballard's vehicle. In answer to the State's petition, Ballard claimed he at no time had any knowledge that his vehicle was used or would be used in violation of chapter 28, article 4. On December 8, 1992, Ballard filed his own petition in the district court asking the court to return his Mercedes to him.

The district court held that the Mercedes was used or was intended for use to facilitate a violation of chapter 28, article 4, and ordered the vehicle forfeited to the State. The trial judge ordered that the vehicle be put to official use by the Lincoln Police Department for not more than 1 year. It was then to be

sold and the proceeds disbursed according to law.

## ANALYSIS

Ballard claims that (1) he had no knowledge that his Mercedes was used or intended for use to facilitate a violation of chapter 28, article 4, and (2) the evidence at the forfeiture trial was insufficient for the district court to find that his vehicle was used or intended for use to facilitate a violation of chapter 28, article 4.

Section 28-431 provides in pertinent part:

> (1) The following shall be seized without warrant by an officer of the Division of Drug Control *or by any peace officer and the same shall be subject to forfeiture*: . . . (f) all conveyances including, but not limited to, . . . vehicles . . . which are used, or intended for use, in transporting any controlled substance with intent to . . . *distribute* [or] *deliver* . . . such controlled substance in violation of this article.

(Emphasis supplied.)

When property is seized pursuant to § 28-431, the person seizing it must file a petition for disposition of such property in the district court of the county in which the seizure took place. § 28-431(4). In this case, that was accomplished through a deputy of the Lancaster County Attorney's office.

The Legislature has furnished an owner who claims that he or she was without knowledge of such a use or intended use of his or her vehicle two avenues to avoid forfeiture. Firstly, § 28-431(4) provides that at any time after seizure and prior to court disposition of the property seized, the owner of such property may petition "the district court of the county in which seizure was made to release such property, and the court shall order the release of the property upon a showing by the owner that he or she had no knowledge that such property was being used in violation" of chapter 28, article 4.

Secondly, the statute provides that any person having an interest in the seized property or any person against whom civil or criminal liability would exist if such property is in violation of § 28-431 may appear and file an answer or demurrer to the State's petition within 30 days after the seizure. Section

28–431(4) further provides:

> If the claimant proves by a preponderance of the evidence that he or she (a) *has not used or intended to use the property to facilitate an offense in violation of this article,* (b) *has an interest in such property as owner or lienor or otherwise, acquired by him or her in good faith, and* (c) *at no time had any knowledge that such property was being or would be used in, or to facilitate, the violation of this article, the court shall order that such property or the value of the claimant's interest in such property be returned to the claimant.* If there are no claims, *if all claims are denied,* or if the value of the property exceeds all claims granted and *it is shown beyond a reasonable doubt* that such property was used in violation of this article, *the court shall order disposition of such property at such time as the property is no longer required as evidence in any criminal proceeding.*

(Emphasis supplied.)

To have his Mercedes returned to him by the district court, Ballard was required to prove by a preponderance of the evidence that (1) his vehicle was not used or intended to be used to transport crack cocaine from Omaha to Lincoln for delivery in violation of chapter 28, article 4, or (2) if his vehicle was used or intended to be used for that purpose, prior to the time his vehicle was stopped by police he had no knowledge that his Mercedes was being used or was intended to be used to facilitate a violation of chapter 28, article 4.

As set forth in his petition for return of seized property and in his answer to the State's forfeiture petition, the cornerstone of Ballard's claim for return to him of his Mercedes is his alleged lack of knowledge that his vehicle was being used or was intended to be used to facilitate a violation of chapter 28, article 4.

Although the trial judge made no specific finding, it is inherent in the trial court's order that as a fact finder, the trial court did not believe Ballard's testimony that he had no knowledge before his Mercedes was stopped by the Lincoln police that his vehicle was used or intended to be used to facilitate a violation of chapter 28, article 4. In his statement to

the police, Ballard said he "figured" Hoskins possessed some crack cocaine and "figured" Hoskins was "gonna sell it, but I didn't care about that . . . you know I figured that's his business . . . ."

Because Ballard's testimony was the only evidence of his "no knowledge" claim, and because the trial court obviously did not believe Ballard's protestations that he had no knowledge that his vehicle was being used or was intended to be used to transport an illegal drug which was to be delivered and sold, Ballard failed to prove by a preponderance of the evidence that he was entitled to have his Mercedes returned to him.

The next step in the appellate review of this case is to determine whether there was sufficient evidence from which the trial court, as the finder of fact, could conclude that the State proved beyond a reasonable doubt that Ballard's Mercedes was used or intended for use in transporting a controlled substance, in this instance crack cocaine, with intent to deliver in violation of chapter 28, article 4, and that Ballard had knowledge of such illegal use and intent before the Lincoln police stopped his Mercedes as it approached Lincoln.

In *State v. Two IGT Video Poker Games*, 237 Neb. 145, 465 N.W.2d 453 (1991), this court held that in rem actions for forfeiture of property to the State are generally considered to sound in equity. As such, they are civil actions, and the required burden of proof on the State is less than the State's "beyond a reasonable doubt" burden of proof in a criminal trial. The *Two IGT Video Poker Games* action was brought under Neb. Rev. Stat. § 28-1111 (Reissue 1989). For forfeiture under § 28-1111, Nebraska's statutes do not require that the State prove beyond a reasonable doubt that it is entitled to the forfeiture of gambling devices which are possessed in violation of chapter 28, article 11.

In *State v. 1987 Jeep Wagoneer*, 241 Neb. 397, 488 N.W.2d 546 (1992), this court noted that § 28-431 provides that to support a forfeiture of a vehicle used to convey illegal drugs for delivery, the State is required to prove beyond a reasonable doubt that the vehicle was used or was intended for use in violation of chapter 28, article 4, of Nebraska's statutes and that the owner had knowledge of such use.

"The intent involved in an actor's conduct is a mental process and may be inferred from the conduct itself; the actor's language, if any, in reference to the conduct; and the circumstances surrounding an incident." 241 Neb. at 400, 488 N.W.2d at 548.

Lincoln police found 5.67 grams of crack cocaine in Ballard's vehicle. This was direct evidence. Sundermeier, who has been involved in several hundred drug investigations, gave expert testimony that such an amount of crack cocaine is consistent with possessing crack cocaine with intent to deliver. He further testified that generally, in Lincoln, crack cocaine is sold for individual use in small rocks of .1 to .3 gram.

Sundermeier said an "eightball," the street term for one-eighth of an ounce of crack cocaine, would be the amount a person who intended to sell cocaine at retail would possess. An eightball is the equivalent of 3.25 grams. In Lincoln, the retail price of an eightball that is broken and sold in individual rocks is about $750, according to Sundermeier. Sundermeier also testified that dealers usually use electronic communications and frequently have weapons and items to smoke and package cocaine. In this case, the police found in the backseat of Ballard's vehicle a cellular phone, a semiautomatic gun, ammunition, rolling papers, and sandwich baggies, one of which contained the crack cocaine found in Ballard's vehicle. As earlier stated, a warm crack pipe was found near Ballard after he was removed from his vehicle. Sundermeier also testified that it has been his experience that there is drug trafficking activity between Lincoln and Omaha and that Interstate 80 is used as an avenue to drive to Omaha to purchase crack cocaine. Ballard's vehicle was spotted by the police traveling west toward Lincoln on Interstate 80.

From all the properly admitted relevant direct and circumstantial evidence in this case and the inferences to be drawn therefrom, including but not limited to Ballard's statement to the police and the evidence that crack cocaine was found in the backseat of Ballard's car and could be sold and delivered to individuals in smaller pieces, that a drug detection dog "hit" upon an area where Ballard had been seated, and that in 20-degree weather a warm crack cocaine pipe was found near

Ballard after he was removed from his vehicle, a fact finder could find, beyond a reasonable doubt, that Ballard's Mercedes was being used or was intended to be used to transport crack cocaine from Omaha to Lincoln with the intent of selling it and that Ballard had knowledge that his Mercedes was being used as a conveyance to transport and facilitate the sale and delivery of crack cocaine, a controlled substance.

We recognize that when the police stopped Ballard's car, they did not find the $2,000 the police informant told them the occupants took with them to Omaha to purchase drugs and that the rock cocaine found in Ballard's car had a value of less than $2,000. However, Sundermeier testified that the term "fronting" refers to the common practice of drug dealers in giving drugs to another individual without charge at the time, the supplier expecting payment at a later date. According to Sundermeier, individuals who are drug dealers occasionally take money and pay for the drugs they have previously purchased at the same time they pick up a new supply, which is again fronted. The wholesale value of the crack cocaine found in Ballard's vehicle was far less than $2,000, but based on Sundermeier's testimony, it was reasonable for a fact finder to conclude that the $2,000 was used to pay for a previous purchase of drugs.

We need not address Ballard's second assignment of error because it was not properly raised in the trial court. In his second assignment of error, Ballard contends that the forfeiture in this case is disproportionate to the alleged underlying offense and runs afoul of the Eighth Amendment's Excessive Fines Clause. Ballard admits in his brief that this issue was not raised in the district court, but he asks this court to apply its plain error rule to reach the merits.

> It is well settled that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion before a tribunal having jurisdiction to determine it. [Citation omitted.] A constitutional question should be raised at the earliest opportunity. [Citation omitted.] Generally, a constitutional question not properly raised in the trial court will not be considered on appeal. [Citations omitted.] In the absence of plain error, when an issue is raised for the first time in an appellate court, the

issue will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted for disposition in the trial court.

*State v. 1987 Jeep Wagoneer*, 241 Neb. 397, 401, 488 N.W.2d 546, 549 (1992). Ballard's request that this court note plain error is rejected.

## CONCLUSION

In this case, there exists sufficient evidence for a fact finder to conclude beyond a reasonable doubt that Ballard's Mercedes, with Ballard's knowledge, was used or was intended to be used to facilitate a violation of chapter 28, article 4. The forfeiture of Ballard's Mercedes to the State was proper in all respects.

The judgment of the trial court is affirmed.

AFFIRMED.