STATE OF NEBRASKA, APPELLEE, V. ONE THOUSAND NINE HUNDRED
FORTY-SEVEN DOLLARS IN U.S. CURRENCY, APPELLEE, AND
THOMAS BADGETT, INTERESTED PARTY, APPELLANT.
583 N.W. 2d 611

Filed August 28, 1998. No. S-96-1237.

Mary Lee Skaff for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee State.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

On September 15, 1994, $1,947 in cash was seized from Thomas Badgett's apartment during the execution of a search warrant. The State of Nebraska filed a petition for disposition of seized property pursuant to Neb. Rev. Stat. § 28-431 (Reissue 1995), alleging that the money was used or intended to be used to facilitate controlled substances transactions and, therefore, should be forfeited to the State. More than 2 years after the

seizure, the district court for Douglas County held a forfeiture hearing and ordered the property forfeited. Upon Badgett's appeal, we reverse the judgment of the district court and remand the cause with directions to return the seized property and to dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 1993, the Nebraska State Patrol investigated marijuana sales allegedly involving Badgett. On September 15, 1994, law enforcement officers executed an arrest warrant for Badgett at his home. During the execution of the warrant, an officer noticed the presence of marijuana and drug paraphernalia in Badgett's apartment and, as a result, obtained a search warrant for the premises. While conducting the ensuing search, officers seized various items, including cash in the amount of $1,947.

On September 22, 1994, the State filed a petition for disposition of seized property pursuant to § 28-431, alleging that the cash was used or intended to be used to facilitate controlled substances transactions and, therefore, should be forfeited. On the same day, the State filed a praecipe for summons, requesting service upon Badgett at his place of residence. On October 21, the State moved for substitute service because attempts to serve Badgett by certified mail at his residence were unsuccessful and his whereabouts were unknown. That day, the district court issued an order allowing the State to serve Badgett by publication. Proof of publication was filed on November 15 following the publication of notice on October 25, November 1, November 8, and November 15.

On November 23, 1994, Badgett filed an answer to the State's petition for disposition, requesting a forfeiture hearing. On December 1, he filed a certificate of readiness for trial. Badgett filed a notice of pretrial conference and a notice of answers to interrogatories and request for production on January 3 and March 7, 1995, respectively.

After 16 months had passed with no action being taken on the forfeiture, Badgett filed a motion to dismiss on July 9, 1996, on the grounds that the statutory time limits for a forfeiture hearing had been exceeded. On July 18, a hearing was held on the motion to dismiss. Subsequently, the district court entered

an order denying Badgett's motion to dismiss. The court noted that the provisions of § 28-431 authorizing service by publication apply only to unknown claimants and that Badgett was a known claimant. Nevertheless, the court held that the general civil procedure rules for service by publication applied in any context, including forfeitures, thereby validating the service in Badgett's case. The court then held that Badgett's answer was filed outside the 30-day time limit permitted for asserting an interest in seized property granted by the third paragraph of § 28-431(4). However, reasoning that a claimant of seized property has a due process right to a hearing to contest a forfeiture, the court concluded that Badgett could intervene in the proceeding by virtue of the second paragraph of § 28-431(4), which permits an "owner of record" to request a release of the property any time after seizure and before court disposition. The court then overruled Badgett's motion to dismiss because it was based upon the time limits contained in the third paragraph of § 28-431(4), which the court held to be inapplicable.

On November 4, 1996, a forfeiture hearing was held before the district court. In an order dated November 6, 1996, the court held that the State had proved beyond a reasonable doubt that the $1,947 was used or intended to be used to facilitate illegal drug transactions and ordered the property forfeited. Badgett appealed this decision, and pursuant to our authority to regulate the dockets of this court and the Nebraska Court of Appeals, we removed the case to our docket.

## ASSIGNMENTS OF ERROR
Badgett contends that the district court erred in (1) denying Badgett a jury trial, (2) holding the forfeiture hearing 2 years after the money was seized, (3) not dismissing the case pursuant to Badgett's diversion agreement, and (4) ordering the property forfeited on insufficient evidence.

## STANDARD OF REVIEW
Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998); *State v. Howard*, 253 Neb. 523, 571 N.W.2d 308 (1997); *State v. Williams*, 253 Neb. 111, 568 N.W.2d 246 (1997).

## ANALYSIS

### DELAY IN CONDUCTING FORFEITURE HEARING

We begin our analysis with Badgett's second assignment of error, because it is dispositive of the case. Badgett asserts that the district court erred in refusing to dismiss the forfeiture action for failure to comply with the time limitations of § 28-431. Section 28-431(4) outlines the procedures for instituting and maintaining a forfeiture action:

When any property described in subdivision (1)(f) [conveyances, such as aircraft or vehicles, used to facilitate a drug transaction] or (g) [money used to facilitate a drug transaction] of this section is seized, the person seizing the same shall cause to be filed, within ten days thereafter, in the district court . . . petition for disposition of such property. . . . The county attorney shall have a copy of the petition served upon the owner of or any person having an interest in the property, if known, in person or by registered or certified mail at his or her last-known address. If the owner is unknown or there is a reasonable probability that there are unknown persons with interests in the property, the county attorney shall provide notice of the seizure and petition for disposition by publication once a week for four consecutive weeks in a newspaper of general circulation in the county of the seizure. At least five days shall elapse between each publication of notice.

At any time after seizure and prior to court disposition, the owner of record of such property may petition the district court of the county in which seizure was made to release such property, and the court shall order the release of the property upon a showing by the owner that he or she had no knowledge that such property was being used in violation of this article.

Any person having an interest in the property proceeded against or any person against whom civil or criminal liability would exist if such property is in violation of this article may, within thirty days after seizure, appear and file an answer or demurrer to the petition. . . . At least thirty but not more than ninety days after seizure, there shall be a hearing before the court. If the claimant proves by a pre-

ponderance of the evidence that he or she (a) has not used or intended to use the property to facilitate an offense in violation of this article, (b) has an interest in such property as owner or lienor or otherwise, acquired by him or her in good faith, and (c) at no time had any knowledge that such property was being or would be used in, or to facilitate, the violation of this article, the court shall order that such property or the value of the claimant's interest in such property be returned to the claimant. If there are no claims, if all claims are denied, or if the value of the property exceeds all claims granted and it is shown beyond a reasonable doubt that such property was used in violation of this article, the court shall order disposition of such property at such time as the property is no longer required as evidence in any criminal proceeding.

In its order on Badgett's motion to dismiss, the district court initially confronted the issue of the adequacy of service. The court noted that the publication provision of § 28-431 applies only to unknown owners and that in the present case, Badgett was a known owner. The court then determined that despite the inapplicability of § 28-431's publication provision, notice by publication was proper because Neb. Rev. Stat. §§ 25-520.01 to 25-520.03 (Reissue 1995), Nebraska's general procedural statutes, permit such publication in civil cases. The court pointed out that the Legislature expressed its intent that §§ 25-520.01 to 25-520.03 "be cumulative and supplemental to existing legislation. They are deemed to be a matter of general statewide concern." § 25-520.03.

We have consistently held that to the extent there is a conflict between two statutes on the same subject, the specific statute controls over the general statute. *State v. Schultz*, 252 Neb. 746, 566 N.W.2d 739 (1997); *SID No. 2 v. County of Stanton*, 252 Neb. 731, 567 N.W.2d 115 (1997); *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996). Clearly, the Legislature intended that service by publication as provided for in the general procedural statutes should be permitted broadly. However, these general rules directly conflict with the forfeiture procedures outlined in § 28-431(4). Section 28-431(4) explicitly allows service by publication only when the owner of the

property is unknown. If the owner is known, service must be accomplished in person or by registered or certified mail. Because § 28-431 specifically applies to forfeiture procedures and §§ 25-520.01 to 25-520.03 are statutes of general applicability, the specific statute prevails. Consequently, the procedures set forth in § 28-431(4) apply in the present case, resulting in a conclusion that Badgett was not properly served.

However, Badgett waived any objections he may have had to service of process by appearing before the district court to contest the forfeiture. According to Neb. Rev. Stat. § 25-516.01(1) (Reissue 1995), "The voluntary appearance of the party is equivalent to service." See, also, *Nebraska Methodist Health Sys. v. Dept. of Health*, 249 Neb. 405, 543 N.W.2d 466 (1996); *Wymore v. Wymore*, 239 Neb. 940, 479 N.W.2d 778 (1992); *Harris v. Eberhardt*, 215 Neb. 240, 338 N.W.2d 53 (1983). Therefore, despite the State's failure to comply with the service requirements of § 28-431(4), Badgett became subject to the jurisdiction of the district court by virtue of his voluntary appearance.

Next, Badgett asserts that the forfeiture hearing was conducted outside the time limits provided in § 28-431 and, therefore, that the district court should have dismissed the action. The language of § 28-431 is problematic. The third paragraph of § 28-431(4) allows an individual with an interest in the property at issue to appear and file an answer or demurrer to the State's petition for disposition. Under the statute, this must be done within 30 days after the seizure. If an owner follows this procedure, he is entitled to a hearing at least 30 days, but not more than 90 days, after the seizure.

The requirement that an interested individual file an answer or demurrer within 30 days after the seizure becomes difficult, if not impossible, to meet when the individual is served by publication, as was attempted in the present case, albeit incorrectly as held above. Under the first paragraph of § 28-431(4), service by publication is not complete until notice is published once a week for 4 weeks, with at least 5 days elapsing between each publication. Even assuming the first publication occurs the same day as the seizure, service would not be completed until 19 days after the seizure, leaving only 11 days for the individ-

ual to assert his interest in the property. The present case provides a more realistic example. Service by publication, had it been a proper method of service, was not completed until November 15, 1994, 61 days after the September 15 seizure. Thus, Badgett would have had to appear to contest the forfeiture 1 month *before* notice was served upon him, in order to preserve his rights under the third paragraph of § 28-431(4).

Recognizing this problem with the language of the statute, the district court nevertheless attempted to give it effect by holding that the third paragraph of § 28-431 was inapplicable because Badgett's answer was filed outside the 30-day period. The court then concluded that the second paragraph of § 28-431(4) must be applied to give Badgett an opportunity to be heard in accordance with principles of due process. While we recognize the difficulty in applying the statutory language, we conclude that the district court's reliance on the second paragraph of § 28-431(4) was misplaced. That provision provides that an "owner of record" may petition the court for release of the property any time after seizure and prior to court disposition. Nebraska's forfeiture statutes do not define "owner of record," but Black's Law Dictionary 1274 (6th ed. 1990) defines "record owner" as "[t]he person in whose name stock shares are registered on the records of the corporation. . . . As regards real property ownership, is person in whose name title appears on official records in contrast with one who claims title through unrecorded documents." Applying this definition, the second paragraph of § 28-431(4) would apply only to persons whose ownership of seized property is a matter of public record. The owner of a vehicle would certainly fall within the parameters of this provision; however, an owner of cash cannot be an "owner of record." Thus, the second paragraph of § 28-431(4) has no application in the present case.

Given that the second paragraph of § 28-431(4) is inapplicable and the third paragraph is unworkable, Badgett argues that there should be a judicially recognized exception to the statutory requirement that an owner file an answer within 30 days of seizure in situations where the owner is denied an opportunity to assert his interest. In these circumstances, Badgett contends that the owner should be given an extension of time to file an answer

and that the date for the forfeiture hearing should be extended accordingly. Badgett argues, however, that the 2-year delay in holding the hearing in the present case is impermissible.

Many jurisdictions have addressed the effect of untimely filings or hearings in the context of forfeiture proceedings. While some have held that failure to comply with the time limitations contained in forfeiture statutes is fatal to the State's claim, *Cochran v. Harris*, 654 So. 2d 969 (Fla. App. 1995); *State v. $1970*, 43 Conn. Supp. 203, 648 A.2d 917 (1994); *State v. 1978 LTD II*, 216 Mont. 401, 701 P.2d 1365 (1985); *State v. Rosen*, 72 Wis. 2d 200, 240 N.W.2d 168 (1976), others have held that these time limitations are directory rather than mandatory. For instance, in *Matter of Sopoci*, 467 N.W.2d 799, 800 (Iowa 1991), the court provided the following test for determining whether a statutory provision is mandatory or directory:

> "If the prescribed duty is essential to the main objective of the statute, the statute ordinarily is mandatory and a violation will invalidate subsequent proceedings under it. If the duty is not essential to accomplishing the principal purpose of the statute but is designed to assure order and promptness in the proceeding, the statute ordinarily is directory and a violation will not invalidate subsequent proceedings unless prejudice is shown."

The court then held that the statutory time limit for conducting a hearing was directory, because the timing of the hearing was not essential to accomplishing the purpose of the forfeiture statute. The court also noted that the statute contained no provision stating that a failure to abide by the time limit would be fatal to the forfeiture action.

We have not yet addressed the mandatory-directory dichotomy in the forfeiture context, but we have applied it to other time periods defined by statute. We have held that as a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. *Loup City Pub. Sch. v. Nebraska Dept. of Rev.*, 252 Neb. 387, 562 N.W.2d 551 (1997); *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997). However, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than

mandatory, it will be done. *State ex rel. Shepherd v. Neb. Equal Opp. Comm., supra*; *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996).

In *State v. Steele*, 224 Neb. 476, 399 N.W.2d 267 (1987), the defendant was admitted to the Lincoln Regional Center pursuant to a statutory requirement that the period not exceed 90 days. We noted that the statute at issue did not contain any sanctions for noncompliance with the time limits; therefore, a failure to comply would not be fatal unless the defendant could demonstrate some prejudice as a result of the delay. We reached similar conclusions in *In re Interest of Brandy M. et al.*, 250 Neb. 510, 550 N.W.2d 17 (1996), and *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990). Both of those cases involved proceedings under the Nebraska Juvenile Code and the failure to abide by certain time limitations. We held that the essence of the statutes was to protect the best interests of the child and that failure to comply with the time limit did not interfere with this interest. Therefore, the time limits were directory rather than mandatory.

These cases demonstrate our reluctance to find statutory time limitations mandatory when they are not central to the purpose of the statute. In the present case, the failure to strictly adhere to the procedures outlined in § 28-431(4) does not interfere with the fundamental purpose of the statute, which is to ensure forfeiture of property or money used in drug transactions in a manner consistent with the requirements of due process. Therefore, we conclude that the time periods specified in § 28-431(4) are directory rather than mandatory and that the State's failure to strictly conform to them is not fatal to the forfeiture action. Nevertheless, this determination does not end our inquiry, because Badgett contends that regardless of whether the time period specified in § 28-431 is mandatory or directory, his right to due process was violated by the fact that the forfeiture hearing was held more than 2 years after the seizure.

Due process is a flexible notion and therefore must be decided on the facts presented in a particular case. *United States v. $8,850*, 461 U.S. 555, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983); *State v. Simants*, 245 Neb. 925, 517 N.W.2d 361 (1994); *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). In *United States v. $8,850*, the U.S. Supreme Court applied the

four-factor test first articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to determine whether the government's delay in instituting forfeiture proceedings violated the property owner's right to due process. The four factors are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. The Court noted that "none of these factors is a necessary or sufficient condition for finding unreasonable delay. Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case." *United States v. $8,850*, 461 U.S. at 565.

We initially address the first factor, the length of the delay, which triggers application of the remaining factors. See *Barker v. Wingo, supra*. The more than 2-year delay in the present case weighs heavily in favor of Badgett.

The second *Barker* factor is the reason for the delay. Many courts have held that the existence of pending criminal charges relating to a forfeiture is a valid reason for the government to delay initiating forfeiture proceedings. *United States v. $8,850, supra*; *Matter of McCorkle*, 972 F. Supp. 1423 (M.D. Fla. 1997); *In re Protective Order*, 790 F. Supp. 1140 (S.D. Fla. 1992); *Commonwealth v. One 1976 Cadillac DeVille Automobile*, 380 Mass. 411, 403 N.E.2d 935 (1980). In the present case, the record reflects that on March 7, 1995, Badgett was charged with unlawful possession with intent to distribute a controlled substance. Thus, the State may have delayed the forfeiture proceedings pending the outcome of Badgett's criminal charges. However, on August 25, the district court signed an order dismissing Badgett's criminal charges because he agreed to participate in a diversion program. The forfeiture hearing was not held until November 4, 1996, over 14 months later. The State's failure to diligently prosecute the forfeiture after Badgett's criminal charges were dismissed is unexplained and inexcusable. This delay, particularly when considered in conjunction with the delay during the pendency of Badgett's criminal charges, constitutes an undue delay without proper justification.

The third *Barker* factor is the claimant's assertion of his rights. In the present case, Badgett expressly asserted his right

to a forfeiture hearing. His first request for a hearing was made in his answer filed November 23, 1994. In addition, on December 1, he filed a certificate of readiness for trial, an assertion that he was prepared for trial and wished to proceed with the forfeiture hearing. He also asserted his rights by filing a motion to dismiss the case because of the delay. Thus, Badgett met his burden by repeatedly asserting his rights.

The final *Barker* factor is whether the claimant was prejudiced by the delay. The Supreme Court has stated that "[t]he primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *United States v. $8,850*, 461 U.S. at 569. However, some courts have interpreted *Barker*'s prejudice requirement more broadly. For instance, the North Dakota Supreme Court has held that "[t]he issue of prejudice . . . is not confined to whether the claimant can adequately present a defense. Due process not only guarantees fair play, ' "[i]ts purpose, more particularly, is to protect [a person's] use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property." ' " *State v. One Black 1989 Cadillac*, 522 N.W.2d 457, 465 (N.D. 1994) (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972))). The court concluded that the claimant in that case was prejudiced because the state deprived him of his right of ownership in the seized automobile, including the right of use, enjoyment, and sale. See, also, *Matter of McCorkle*, 972 F. Supp. 1423 (M.D. Fla. 1997) (implying that under different facts it would consider factors beyond prejudice to defense such as financial burden suffered by claimant).

In the present case, Badgett presented no evidence that the 2-year delay hampered his defense. Nonetheless, we adopt the more flexible approach advocated by the North Dakota Supreme Court, which allows the claimant to demonstrate prejudice through evidence of financial hardship or undue impairment of the right to use and enjoy the property. The record in this case demonstrates that Badgett was financially burdened by

the prolonged deprivation of his property. Badgett testified that he was "really having a hard time" because of the financial loss he suffered by the seizure. Badgett attempted to expand on this line of questioning, but the district court would not allow further inquiry, on the grounds that the testimony was irrelevant. Clearly, this questioning was relevant to the issue of prejudice. Badgett should have been permitted to further testify on the issue of prejudice, but, despite this error, the record sufficiently demonstrates the financial burden suffered by Badgett due to the State's delay. Thus, under the fourth *Barker* factor, we conclude that Badgett was prejudiced. See *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

Application of the *Barker* balancing test weighs in favor of Badgett. A delay of more than 2 years between the seizure and the forfeiture hearing is clearly significant, and no justification exists for at least 13 months of that delay. In addition, Badgett asserted his right to a prompt hearing by filing his certificate of readiness for trial less than 3 months after the seizure and by filing a motion to dismiss based on the undue delay. Finally, Badgett was prejudiced by the financial burden resulting from the seizure. We conclude that Badgett's due process rights were violated by the delay and that the district court erred in overruling Badgett's motion to dismiss.

## MOTION FOR LEGAL FEES

Badgett has filed a motion for legal fees pursuant to Neb. Rev. Stat. § 25-1803 (Reissue 1995), which provides:

> (1) Unless otherwise provided by law, the court having jurisdiction over a civil action brought by the state or an action for judicial review brought against the state pursuant to the Administrative Procedure Act shall award fees and other expenses to the prevailing party unless the prevailing party is the state, except that the court shall not award fees and expenses if it finds that the position of the state was substantially justified.

Because this case does not arise under the Administrative Procedure Act, recovery of attorney fees and expenses under § 25-1803 rests upon whether a forfeiture proceeding pursuant to § 28-431 is a "civil action" within the meaning of § 25-1803.

In other contexts, we have characterized such proceedings as criminal in nature. See, *State v. One 1985 Mercedes 190D Automobile*, 247 Neb. 335, 526 N.W.2d 657 (1995); *State v. 1987 Jeep Wagoneer*, 241 Neb. 397, 488 N.W.2d 546 (1992); *State v. One 1987 Toyota Pickup*, 233 Neb. 670, 447 N.W.2d 243 (1989). These cases were decided prior to *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996), in which the U.S. Supreme Court held that actions authorizing in rem forfeiture proceedings directed at property used or intended for use in unlawful narcotics transactions were civil in nature and therefore not barred under principles of double jeopardy by the property owner's prior criminal conviction. See, 18 U.S.C. § 981 (1994); 21 U.S.C. § 881 (1994).

However, we need not reach the issue of whether *Ursery* requires reversal of our prior cases in order to resolve Badgett's motion for legal fees.

A court shall not award attorney fees and expenses under § 25-1803 if it determines "the position of the state was substantially justified." § 25-1803. In the order from which Badgett appeals, the district court found "beyond a reasonable doubt that the $1,947.00 in U.S. currency found by police officers in the Defendant's apartment on September 15, 1994 was used or intended to be used to facilitate a violation of Article 4, Drugs and Narcotics, of the Nebraska Statutes." In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Hilliard v. Robertson*, 253 Neb. 232, 570 N.W.2d 180 (1997); *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813 (1997). Based upon our review of the record, we cannot conclude that the trial court's finding on the merits was clearly erroneous. Thus, although Badgett has prevailed in this action because of procedural delays which deprived him of due process, the trial court's finding establishes substantial justification for the State's position, which would preclude an award of attorney fees and expenses under § 25-1803 even if we were to determine in light of *Ursery, supra*, that a forfeiture action pursuant to § 28-431 is civil in nature, an issue we do not decide.

## CONCLUSION

We conclude that Badgett was denied due process and, thus, is entitled to dismissal of this action. For the reasons stated herein, we reverse the judgment of the district court and remand the cause to the district court with directions to order that the seized property be returned to Badgett and to dismiss the cause.

REVERSED AND REMANDED WITH DIRECTIONS.