277 Neb. 866
LOUIS OBAD, APPELLANT,
v.
STATE OF NEBRASKA, APPELLEE.
No. S-08-703.
Supreme Court of Nebraska.
Filed May 29, 2009.
Donald J.B. Miller, of Matzke, Mattoon & Miller, L.L.C., L.L.O., for appellant.
Jon Bruning, Attorney General, and George R. Love for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF THE CASE
Appellant, Louis Obad, was stopped by a Nebraska State Patrol trooper, and during the stop, the trooper seized currency and other property from Obad's vehicle. Obad filed an "application for return of property" in the district court for Cheyenne County. On March 5, 2008, the district court ordered that the State return the property to Obad, but later, on May 20, the court vacated its initial order after the record at a full hearing established that the currency had been transferred to the federal government prior to the March 5 order and that forfeiture proceedings in federal court had thereafter been commenced. Obad appeals. We conclude that the district court did not abuse its discretion when it vacated its initial order and ultimately denied the "application for return of property." We affirm.

STATEMENT OF FACTS
Obad was driving an automobile on Interstate 80 in Cheyenne County, Nebraska, on January 19, 2008, when he was stopped for speeding by Trooper Aaron Watson. Obad declined Watson's request to search his vehicle. Obad was detained approximately 30 minutes while the trooper requested the assistance of another trooper with a drug detection dog.
During this time, Obad told Watson that he was traveling to Las Vegas, Nevada, to gamble. Watson asked if Obad had any cash, and Obad stated that he had $40,000 in cash for gambling. After having the drug detection dog assess the vehicle, the troopers entered the vehicle and seized U.S. currency totaling $43,584, along with other personal property. A marijuana cigarette was also found in the vehicle. Obad was not arrested at the time of the stop. The Cheyenne County attorney filed criminal charges against Obad, but the charges were later dropped. After seizing the money, Watson took it to a bank in Scottsbluff, Nebraska. As discussed below, a check was subsequently made out to the U.S. Marshals Service.
On January 24, 2008, Obad filed a pleading entitled "Application for Return of Property" in the district court for Cheyenne County, alleging that the money seized was not contraband, evidence, or used in the commission of a crime and that it should be returned to Obad. Obad did not state the statutory basis for the request in his pleading.
On January 29, 2008, the Nebraska State Patrol sent a certified check for $43,584 to the U.S. Marshals Service because the U.S. Attorney's office agreed to seek forfeiture of the money under federal law. The district court held a hearing on Obad's application for return of property on February 4. At the hearing, Watson testified that he believed the money had already been transferred to the federal Drug Enforcement Agency and that he believed that agency would go forward with a forfeiture action.
On March 5, 2008, the district court entered an order directing the State to return the seized currency and property to Obad. In its order, the court found that the State had not filed a forfeiture action within the 10 days allowed by Neb. Rev. Stat. § 28-431 (Reissue 2008) and that the cash was not needed as evidence in any criminal proceeding. The district court further found that Obad had shown that he had no knowledge of any violation of the Uniform Controlled Substances Act and that he had no knowledge that the currency was used in a transaction violating that act. The district court determined that Obad was entitled to the return of the currency and property.
On April 1, 2008, the State filed a motion to vacate the March 5 order. The State noted that the currency had been transferred to the federal government prior to the court's March 5 order directing the State to return the currency to Obad. The State further asserted that because the federal government had commenced a forfeiture action of the seized money on March 19, the district court did not have jurisdiction over the money. The district court held a hearing on the matter and, on May 20, entered an order vacating its March 5 order, thus ultimately denying the relief sought in Obad's application for return of property. Obad appeals.

ASSIGNMENTS OF ERROR
Obad contends that the district court erred by (1) vacating its order of March 5, 2008, thus denying Obad the return of his property under the State's forfeiture statute, and (2) failing to find that because the Nebraska state courts had initially exercised jurisdiction over the matter, the federal forfeiture action should not be permitted to circumvent procedures under state law.

STANDARD OF REVIEW
[1] We review a ruling on a motion to vacate for abuse of discretion. State on behalf of A.E. v. Buckhalter, 273 Neb. 443, 730 N.W.2d 340 (2007).

ANALYSIS
Obad contends that the district court erred when it vacated its prior order which had directed the State to return Obad's property. Obad claims that he was entitled to the property under the Nebraska forfeiture statute. Obad further reasons that because the State first exercised jurisdiction over the currency, the federal courts could not properly obtain jurisdiction over the currency, and that requiring him to litigate this matter in federal court creates wasteful litigation. Appellee, the State, responds by arguing that the district court properly vacated its initial order because Obad did not use the proper statutory procedure for requesting the return of his money. The State further argues that at the time of the hearing on the application for return of property, the money was already in the jurisdiction of the federal court, and that therefore, by virtue of "adoptive seizure," the district court could not order the money returned. The State also notes that the State did not bring a forfeiture action, but that the federal government had commenced forfeiture proceedings prior to the court's consideration of the State's motion to vacate.
[2] As an initial matter, we note that Obad's application for return of property, and the district court's March 5, 2008, order directing the State to return Obad's property, related to both the cash seized and other property seized from Obad's vehicle, including primarily a digital camera and a cellular telephone. However, in the instant appeal, Obad's arguments that the district court abused its discretion in vacating its order are limited to the validity of the Nebraska State Patrol's transfer of the money to the federal government. Obad does not address how the district court erred in vacating its order as it related to the other property. To be considered by an appellate court, an error must be both specifically assigned and specifically argued in the brief of the party asserting the error. Malchow v. Doyle, 275 Neb. 530, 748 N.W.2d 28 (2008). Therefore, this opinion will address Obad's assigned and argued error, which is limited to the claim that the district court erred by vacating its initial order directing the State to return the seized currency.
Obad's first assigned error implicates the State's forfeiture statute. In an effort to recover his currency, Obad filed a pleading titled "Application for Return of Property." The pleading itself did not indicate on what statutory basis Obad was requesting the return of his currency. However, in his brief to this court, Obad states that he filed the application for return of property pursuant to the State's forfeiture statute, § 28-431. Further, in the district court's initial March 5, 2008, order, that was later vacated, the court based its reasoning and determination that the currency should be returned to Obad on the State's purported failure to comply with the requirements of the State's forfeiture statute.
[3] Given the posture of this case, we must examine what authority is afforded a claimant seeking to recover his or her property under the forfeiture statute. Section 28-431(4) sets forth two avenues by which a purported owner or claimant may prevent forfeiture and recover his or her property. First, under § 28-431(4), the forfeiture statute allows the owner of record of such property, at any time after seizure and prior to court disposition, to petition the district court of the county in which seizure was made to release such property. Second, § 28-431(4) provides that "[a]ny person having an interest in the property proceeded against or any person against whom civil or criminal liability would exist if such property is in violation of the [Uniform Controlled Substances Act] may, within thirty days after seizure, appear and file an answer or demurrer to the petition."
[4] With respect to Obad's recovering the currency through the first avenue, § 28-431(4) states that this method can be used at "any time after seizure and prior to court disposition" by the "owner of record." This appeal is limited to the seized cash. We have held that the alleged owner of cash cannot be an "owner of record." See State v. $1,947, 255 Neb. 290, 583 N.W.2d 611 (1998). See, also, State v. $3,067.65 in U.S. Currency, 4 Neb. App. 443, 545 N.W.2d 129 (1996). Therefore, because Obad is not an "owner of record," he cannot successfully seek recovery of the seized currency under this statutory authority.
With respect to Obad's recovering the currency through the second avenue, the State forfeiture statute clearly anticipates the filing of forfeiture proceedings by the State before the claimant may seek recovery of property. The relevant language of the statute states that "[a]ny person having an interest in the property . . . may, within thirty days after seizure, appear and file an answer or demurrer to the petition." § 28-431(4) (emphasis supplied). Given the plain language of the statute, we understand "petition" to refer to a petition to forfeit filed by the State and an "answer or demurrer" to be a pleading filed in response thereto. Therefore, under this statutory authority, Obad could not recover the seized currency prior to the State's initiating forfeiture proceedings by way of a "petition."
Because Obad was not an "owner of record," he could not successfully seek return of the currency under § 28-431, and in any event, because he was without statutory authority to initiate and seek recovery of the currency prior to the State's filing a petition for forfeiture, we conclude that the district court erred when it granted his application for return on March 5, 2008. Therefore, the court did not abuse its discretion when it vacated such order, which had instructed the State to return Obad's money and was based on erroneous reasoning regarding the State's purported failure to comply with the forfeiture statute.
[5] In his second assignment of error, Obad focuses on the propriety of the federal government's exercise of authority over the currency. In this regard, we note that in this case, at the time the district court held the first hearing on Obad's application for return of property, the seized currency had already been transferred to the federal government, which adopted the seizure in anticipation of filing federal forfeiture proceedings, and the State had not commencedand it did not later commencea forfeiture action. The Court of Appeals for the Eighth Circuit has explained that a federal agency's adoption of a seizure has the same effect as if the federal agency had originally seized the property on the date it was seized by the local authorities. Madewell v. Downs, 68 F.3d 1030 (8th Cir. 1995). In this case, the federal government proceeded to initiate forfeiture proceedings on March 19, 2008.
[6] Other courts dealing with similar facts have acknowledged that where no state forfeiture proceedings are initiated, once the property was delivered to the Drug Enforcement Agency and a federal forfeiture proceeding was instituted, state jurisdiction ended. See, e.g., U.S. v. $12,390.00, 956 F.2d 801 (8th Cir. 1992); Cavaliere v. Town of North Beach, 101 Md. App. 319, 646 A.2d 1058 (1994); Morgan v. Property Clerk, 184 Misc. 2d 406, 708 N.Y.S.2d 262 (2000); State v. Hill, 153 N.C. App. 716, 570 S.E.2d 768 (2002) (stating that once federal agency has adopted local seizure, party may not attempt to thwart forfeiture by collateral attack in state courts, for at that point, exclusive original jurisdiction is vested in federal court by virtue of 28 U.S.C. § 1355 (2006)).
As noted above, the court's initial order of March 5, 2008, was in error. Here, the State had not initiated forfeiture proceedings at the time the court held its initial hearing on the application for return of property, the federal government had already adopted the seizure of the currency, and the currency was in the jurisdiction of the federal court. We find no impropriety in the transfer of the currency and the adoptive seizure by the federal government.
[7] The federal government commenced forfeiture proceedings on March 19, 2008, and thus, the currency was subject to forfeiture at the time the court conducted the hearing on the State's motion to vacate. We have stated that denial of return of property is proper where the property is subject to forfeiture. See State v. Agee, 274 Neb. 445, 741 N.W.2d 161 (2007). In this case, because the currency was subject to forfeiture, the court correctly vacated its earlier order directing return. We reject Obad's second assignment of error challenging the propriety of the federal government's exercise of jurisdiction and the cessation of the State's exercise of jurisdiction over the matter as reflected in its order of May 20.

CONCLUSION
As discussed above, Obad had no statutory authority to bring or successfully request the return of the seized currency under § 28-431. Although our reasoning differs from that of the district court, see Tyson Fresh Meats v. State, 270 Neb. 535, 704 N.W.2d 788 (2005), we nevertheless affirm the district court's order of May 20, 2008, which vacated its initial order of March 5 and ultimately denied Obad's application for the return of property.
Affirmed.
HEAVICAN, C.J., not participating.