646 A.2d 1058

**Joann CAVALIERE**

v.

**TOWN OF NORTH BEACH, Maryland.**

**No. 1773, September Term, 1993.**

Court of Special Appeals of Maryland.

Sept. 2, 1994.

Robert H. Wolf (Alpertstein & Diener, P.A., on the brief), Baltimore, for appellant.

John F. Shay, Jr. (Knight, Manzi, Brennan, Ostrom & Ham, P.A., on the brief) Upper Marlboro, for appellee.

Argued before WILNER, C.J., ALPERT, J., and ROSALYN B. BELL, Associate Judge of the Court of Appeals (retired), Specially Assigned.

WILNER, Chief Judge.

The issue before us in this appeal is whether a State or local police officer who seizes a motor vehicle under the authority of Md.Code art. 27, § 297 may, instead of proceeding with a forfeiture action under that statute, defer to a Federal forfeiture proceeding under 21 U.S.C. § 881.

That issue, involving money rather than a vehicle, was probably before us once before, in *State v. Walls*, 90 Md.App. 300, 600 A.2d 1165 (1992), but, because of the extremely poor manner in which that case proceeded and was presented at both the trial and appellate levels (we characterized it at 303 as a "nightmare of procedural missteps and errors by everyone involved"), we did not appreciate the issue and therefore

gave it scant attention. We shall address it fully now, and our answer, under the circumstances of this case, is "yes." We therefore shall affirm the judgment of the Circuit Court for Calvert County.

## Underlying Facts; Adoptive Seizures

The relevant facts here are not in dispute. In the early morning hours of May 14, 1992, Jason Leavitt, a police officer employed by the town of North Beach, in Calvert County, stopped appellant for erratic driving. After conducting certain field sobriety tests, Officer Leavitt arrested her for driving while intoxicated and transported her to a nearby State Police barrack. Her car was towed to the town garage. At the barrack, police discovered in appellant's purse four packets of cocaine weighing approximately 4½ grams. As a result, appellant was charged not only with DWI but also with possession with intent to distribute cocaine and possession of cocaine.

At that point, the town police could have set in motion the procedure established by State law, in art. 27, § 297, for the forfeiture of appellant's car. That would have required, among other things, (1) a formal determination by the chief law enforcement officer of the town that forfeiture was warranted under the standards set forth in § 297(i), (2) a written recommendation by that officer to the Town Council—the town's legislative body, (3) an independent determination by the Council, using the same standards, that forfeiture was warranted, (4) a determination from the records of the Motor Vehicle Administration of all lienholders, (5) an application by the Town Council to the circuit court, thereby inaugurating a judicial proceeding for forfeiture, and (6) three publications of notice of the forfeiture action in a newspaper of general circulation in the county. If, as was the case here, the vehicle was subject to a lien, the town, following an order of forfeiture by the court, would have been required to turn the car over to the lienholder for sale, and would, in the end, have received only the net proceeds after satisfaction of all expenses, court costs, and the lien. That is a formidable process for a town

whose population, according to the 1991–92 Maryland Manual, numbered only 1,173.

Section 297 is not the only forfeiture statute operative in Maryland. Through the Controlled Substances Act, Congress, as a matter of Federal law, declared cocaine to be a controlled substance (21 U.S.C. § 812), the knowing and intentional possession of that substance to be unlawful (§ 844), and vehicles used to facilitate the transportation of it subject to forfeiture by the United States (§ 881(a)(4)). Such vehicles may be seized by the Attorney General without process when the seizure is incident to an arrest or when the Attorney General has probable cause to believe that the property is subject to civil forfeiture under the Act. § 881(b)(1) and (4).

The forfeiture procedure under Federal law is somewhat less cumbersome than under art. 27, § 297. For one thing, for vehicles not exceeding $100,000 in value, it is principally an administrative proceeding. Section 881(d) incorporates the statutory procedure used in the forfeiture of property under the customs laws (19 U.S.C. §§ 1602–1618), which is explained as well in 21 C.F.R. Subpart E (§§ 1316.71–1316.81). Under this procedure, upon seizing a vehicle, the Federal agency— here the Drug Enforcement Administration (DEA)—has it appraised. It then publishes notice of the seizure three times in a newspaper of general circulation in the judicial district. The notice describes the property seized and warns that any person desiring to make claim to it must, within 20 days after the first publication, file a claim with the DEA along with a bond for the lower of $5,000 or 10% of the property's value (§ 1316.75).[1] If a claim and bond are not received within the 20 days, DEA declares the property forfeit. No court proceeding or order is required in that circumstance.

If a claim and bond are timely filed, the administrative forfeiture proceeding ceases and DEA forwards the matter to the U.S. Attorney, who then may institute condemnation pro-

---

1. Although there is no express provision for this in the regulations, the notice given by DEA provides for a possible waiver of the bond if the claimant is indigent.

ceedings in the U.S. District Court (§§ 1316.76–78). Court action is thus required only if a claim and bond are filed.

In addition to contesting a forfeiture through the claim procedure, a person interested in the seized property may, within 30 days after notice of the seizure, file a petition for remission or mitigation with DEA. No bond is necessary for such a petition, but the grant of remission or mitigation is discretionary with DEA or, if the matter has already been referred to the U.S. Attorney, with that official. 19 U.S.C. § 1618; 21 U.S.C. § 881(d); 21 C.F.R. § 1316.81.

Although not expressly authorized in the Federal statutes or regulations, the U.S. Attorney General, as part of a cooperative effort between the Federal, State, and local governments in combatting the illicit distribution and use of controlled substances, has permitted DEA to "adopt" seizures made by local officials and to utilize the Federal forfeiture procedure with respect to such property.[2] As explained in the March, 1994 Department of Justice *Guide to Equitable Sharing of Federally Forfeited Property for State and Local Law Enforcement Agencies*, "[a] state or local law enforcement agency that has seized property may request that [DEA] adopt the seizure and proceed with federal forfeiture. [DEA] may adopt such seized property for federal forfeiture where the conduct giving rise to the seizure is in violation of federal law and federal law provides for forfeiture." *Id.* at 3. In *Johnson v. Johnson*, 849 P.2d 1361, 1363 (Alaska 1993), the Court further described the process:

"Through informal arrangements, local police departments agree to notify the DEA when they seize property which may be subject to forfeiture pursuant to federal narcotics laws. Upon a DEA request, the local police department will transfer the property to the DEA, which will treat the

---

**2.** Section 873 of 21 U.S.C. does authorize the Attorney General to cooperate with State and local agencies "concerning traffic in controlled substances and in suppressing the abuse of controlled substances" and, in furtherance of that general authority, to "cooperate in the institution and prosecution of cases in the courts of the United States and ... courts of the several States." 21 U.S.C. § 873(a)(2).

property as if it had been seized by federal authorities. That is, the DEA will 'adopt' the seizure. The DEA will then institute federal forfeiture proceedings against the property. Once the forfeiture is complete, the DEA is authorized to 'split the pot' with the cooperating local police department."

*See also Asset Forfeiture Law, Practice, and Policy,* Asset Forfeiture Office, Criminal Division, U.S. Department of Justice, Vol. I. (1988) at 38: "State and local agencies generally request federal adoption when, after making a seizure, they determine that a state forfeiture proceeding is not possible or that a federal proceeding would be more advantageous." The Federal agencies do not adopt every State or local seizure but have developed guidelines for determining which they may and which they will not adopt.

The "pot-splitting" noted in *Johnson* is specifically allowed by 21 U.S.C. § 881(e)(1)(A), which authorizes the Attorney General, among other things, to transfer forfeited property "to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property." The ground rules for the splitting are set forth in the Department of Justice *Guide* cited above. The split is based on the net proceeds of the forfeiture, after deduction of Federal expenses, and the degree of pre-seizure activity performed by the State or local agency. *Id.* at 6–9.

It was stipulated in the circuit court that "the North Beach Police Department has been working with the DEA Task Force on drug cases, and had a relationship with the DEA, and that's why they chose to send this case to them for forfeiture." The town's counsel informed the court that DEA agents had earlier met with the Town Council and the local police chief and provided the town with the guidelines for adoptive seizures. One local officer was actually detailed to work as part of a joint task force.

On May 14, 1992—the same day that appellant was arrested and charged with the controlled substance offenses—the North Beach police department filled out and later filed with

DEA an Application for Transfer of Federally Forfeited Property on the form approved by the Attorney General for adoptive seizures. It appears that the application was received by DEA on June 5 and, on June 8, the seizure was adopted by DEA for administrative forfeiture. The car was appraised at $7,000, with a wholesale value of $5,650, subject to a GMAC lien of $1,780.

On June 29, DEA sent a notice of seizure by certified mail to appellant at the address shown on her driver's license; it was also the address she had given the police upon her arrest. The notice to appellant was returned "unclaimed." Counsel proffered to the court that appellant had "moved to another address not far away," although there is no evidence as to when or where she moved or that DEA was aware of the move. On July 8, 1992, notice of the seizure was initially published in *USA Today,* a newspaper of general circulation in the District of Maryland. That seems to be the newspaper of choice for DEA. *See Sarit v. U.S. Drug Enforcement Admin.,* 987 F.2d 10, 12 (1st. Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). It is not contested that both notices complied with the applicable Federal regulation, 21 C.F.R. § 1316.75, and warned that the last day for filing a claim was July 28, 1992.

On July 22, 1992, DEA received a lienholder petition from GMAC. Having received no claim from appellant, however, the agency, on August 14, 1992, entered an order that the vehicle "was administratively forfeited to the United States." Immediately upon receiving notice of that forfeiture order, the town surrendered possession of the car to DEA. In October, DEA paid GMAC the amount of its lien.

On July 22, 1992, after DEA decided to adopt the local seizure and sent and published notice of the proposed forfeiture, but before the administrative forfeiture proceeding was concluded and while the town still had physical possession of the vehicle, appellant filed in the Circuit Court for Calvert County a petition for writ of mandamus seeking an order directing the town of North Beach, the Chief of Police, or the

county State's Attorney to return the vehicle to her. The petition confirms appellant's awareness that the matter had been referred to DEA, and thus indicates a conscious decision not to follow the Federal procedures for contesting the forfeiture or seeking remission or mitigation. Indeed, she charged that the referral was "an attempt to circumvent mandatory state law."

The petition was based on the requirement in art. 27, § 297(h)(2)(ii) that a complaint for forfeiture of a motor vehicle be filed in the circuit court within 45 days after the seizure of the vehicle. Because the town did not file such a complaint within 45 days after the May 14, 1992 seizure, appellant averred that she was entitled to have the vehicle returned. She contended that, having seized the car and thus having assumed initial jurisdiction over it, the town could not circumvent that requirement of State law by releasing the car to the DEA.

The State's Attorney and the Chief of Police were dismissed on motion. On September 21, 1993, the court denied the petition with respect to the town—the only remaining defendant. It concluded that, where both State and Federal *in rem* forfeiture proceedings are authorized, as they were in this case, the first of the two sovereigns to commence proceedings prevails to the exclusion of the other, and that, as no State proceedings were instituted prior to the initiation of Federal proceedings, the United States had assumed exclusive jurisdiction over the vehicle. The failure of the town to seek forfeiture under § 297 within 45 days was therefore of no significance.

In this appeal, appellant presses her claim that the town had no right to circumvent the State forfeiture law—in particular the requirement that a forfeiture petition be filed within 45 days—and transfer the vehicle instead to DEA. She claims as well in a caption to her argument that the transfer of her car to DEA denied her due process of law, although she does

not elaborate on that contention.[3] The thrust of her argument

---

**3.** In her brief, appellant cites a trilogy of recent Supreme Court cases that placed some Constitutional limitations on the forfeiture of property under § 881. She does not indicate how those cases are applicable to her situation, and, indeed, none of them *are* apposite. She cites the plurality decision in *United States v. 92 Buena Vista Ave., Rumson, N.J.,* ——— U.S. ———, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993), for the proposition that ownership of seized property "continue[s] to vest in the lawful owner until such time as a judicial forfeiture finding had been heard and a decision made that the property was subject to forfeiture." Presumably, the point sought to be made through this reference is that, until such time as there is a Federal judicial determination of forfeiture, title remains vested in appellant and that, because of the town's failure to file a State court proceeding within 45 days, she is entitled to have the car returned.

If that indeed is her point, she is vastly overstating the holding and relevance of *92 Buena Vista Ave.* For one thing, that case involved the forfeiture of real property which, under Federal law, requires judicial action and is not subject to the administrative forfeiture procedure. That explains the reference to a judicial determination. The property was a house that the respondent had purchased seven years earlier with money given to her by her boyfriend; there was no indication that the respondent or the house itself was ever involved in unlawful drug activity. The Government contended that the money to purchase the house came from illicit drug activity and that, as a result, the statute "vested ownership in the United States at the moment when the proceeds of the illegal drug transaction were used to pay the purchase price." ——— U.S. at ———, 113 S.Ct. at 1134. It was that theory of relation-back-automatic-vesting that the Court rejected. That has nothing whatever to do with this case.

The second case cited is *Austin v. United States,* ——— U.S. ———, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), applying the Eighth Amendment *Excessive Fines Clause* to civil forfeiture proceedings. The Government sought to forfeit Austin's home and business because of his sale of two grams of cocaine and the discovery in the property of small amounts of marijuana and cocaine. The Supreme Court held that the Clause applied and remanded the case for further proceedings to determine whether the penalty was Constitutionally disproportionate to the offense. No claim has been made in this case that the forfeiture of appellant's vehicle is disproportionate to the offense, and we therefore fail to see the relevance of *Austin.*

Finally, appellant cites *United States v. James Daniel Good Real Property,* ——— U.S. ———, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), also involving the forfeiture of real property. The Court held there that an owner is entitled to notice and a hearing on a proposed forfeiture and that a forfeiture of his home ordered by a United States magistrate in an *ex parte* proceeding did not comport with due process. As we have indicated, there was no failure of notice and opportunity for hearing in this case. When appellant filed her State court proceeding, she was aware of the Federal proceeding and simply chose not to contest it.

is simply that, having first exercised jurisdiction over the vehicle by seizing and taking possession of it, the town's exclusive option, if it chose to proceed with forfeiture, was under § 297, and that, having failed to comply with the 45-day requirement, it was duty-bound to return the vehicle or compensate appellant for its loss. We find no merit in that argument and shall therefore affirm.

### Discussion

We start with the fact that there is a dual sovereignty operating here. The use of a vehicle to transport cocaine is a violation of both State and Federal law, and both governments, by statute, have authorized the seizure and forfeiture of such vehicles. There is no doubt, then, that either sovereignty—in this case the town or DEA—was authorized to seize the vehicle and commence forfeiture proceedings. Indeed, Congress has expressly recognized this dual sovereignty. In the Controlled Substances Act itself, 21 U.S.C. § 903, Congress stated expressly that no provision of that Act was to be construed as indicating an intent to "occupy the field in which that provision operates ... to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State" unless the two provisions were irreconcilably inconsistent.

The Supreme Court laid down the ground rules to be applied in cases of concurrent jurisdiction between State and Federal courts nearly 60 years ago, holding in *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935), that:

"Where the judgment sought is strictly in personam, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other.... But, if the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in

order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. To avoid unseemly and disastrous conflicts in the administration of our dual judicial system ... and to protect the judicial processes of the court first assuming jurisdiction ... the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other."

It has generally been recognized that this doctrine is not one of Constitutional imperative, but rather one of comity, of accommodation. The doctrine has been applied in cases where forfeiture proceedings have been commenced in both State and Federal courts under the respective controlled substance laws. *See United States v. One 1985 Cadillac Seville,* 866 F.2d 1142 (9th Cir.1989); *United States v. $79,- 123.49 in United States Cash and Currency,* 830 F.2d 94 (7th Cir.1987). It is not strictly applicable here, as neither the State court nor a Federal court has assumed jurisdiction over the vehicle in an *in rem* proceeding. The principle underlying that doctrine *is* applicable, however.

We find nothing improper, much less unlawful, about the cooperative arrangements between Federal, State, and local authorities, including the procedure for utilizing the Federal forfeiture process in lieu of the State process. All three levels of government have a strong mutual interest in defending society against the unholy scourge of drugs and, with that, a common need to "avoid unseemly and disastrous conflicts" in the effective enforcement of the controlled substance laws. Congress has expressed this interest through § 903 and the "pot-splitting" provision in § 881(e)(1)(A); the State has expressed it in art. 27, § 296, requiring all police officers and State's Attorneys "to cooperate with all agencies charged with the enforcement of the laws of the United States," and through Executive Order of the Governor creating the Governor's Drug and Alcohol Abuse Commission and directing it, among other things, to recommend ways "to improve the

coordination of the activities of all appropriate federal, State and local government agencies...." COMAR 01.01.1991.31.

Directly on point are *Conrod v. Missouri State Highway Patrol,* 810 S.W.2d 614 (Mo.Ct.App.1991) and *United States v. $12,390.00,* 956 F.2d 801 (8th Cir.1992). In both cases, as happened here, a State or local police officer seized personal property (money) allegedly used in connection with violations of the controlled substance laws and, before any State forfeiture proceeding was filed, turned the property over to DEA, which adopted the local seizure and commenced Federal forfeiture proceedings. Thereafter, the owner sued for the return of the property. Both courts dismissed the claim, holding that, once the property was delivered to DEA and a Federal forfeiture proceeding was instituted, State jurisdiction ended. *See also United States v. Winston–Salem/Forsyth County Bd. of Educ.,* 902 F.2d 267 (4th Cir.1990); *United States v. Certain Real Property,* 986 F.2d 990 (6th Cir.1993); *People v. Martinez,* 151 Misc.2d 641, 574 N.Y.S.2d 467 (Sup. 1991); *compare Scarabin v. Drug Enforcement Admin.,* 966 F.2d 989 (5th Cir.1992), where, through some not-so-clever legerdemain, DEA "outfoxed" itself and ended up with property other than that which had been seized.

It is true, of course, that, if a State or local police official chooses to seek forfeiture of property under State law, the official must comply with the requirements of § 297. We find nothing in that section, however, or in any other State law, that requires the official to seek forfeiture under the State law or that precludes use of the Federal law in accordance with applicable Federal regulations and guidelines. Notwithstanding that appellant's vehicle was apparently still stored at the town garage when she filed her petition for mandamus, the fact is that, at that point, DEA had already adopted the seizure, assumed jurisdiction over the vehicle, and commenced Federal forfeiture proceedings of which appellant was aware. It would have been inappropriate for the circuit court to interfere with the pending Federal proceeding by returning the vehicle to appellant, and, as we find no impropriety in the

town's request for adoptive seizure, appellant has no claim for damages against the town.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.