866 A.2d 143

William L. DeSANTIS, Jr.

v.

STATE of Maryland.

No. 141, Sept. Term, 2003.

Court of Appeals of Maryland.

Jan. 19, 2005.

Leo W. Ottey, Jr. (Harry L. Chase of Chase, Chase & Hammerschlag, Baltimore), on brief for Appellant.

H. Scott Curtis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland), on brief for Appellee.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

RAKER, Judge.

The United States Attorney General has authorized the federal Drug Enforcement Agency (DEA) to "adopt" seizures of property made by state or local authorities in the course of drug investigations, generally after the state or local authorities request the DEA to do so. *See* 21 U.S.C. § 873. After the DEA completes federal forfeiture proceedings on the property, the DEA is further authorized to distribute a large percentage of the proceeds from the forfeited property back to the state or local authority that requested federal adoption. *See* 21 U.S.C. § 881(e)(1)(A).

The question presented for our review is whether the Maryland State Police may, consistent with Md.Code (1957, 1996 Repl.Vol., 1999 Cum.Supp.), Art. 27, § 297(e),[1] deliver custody of such seized property to the DEA after the request for adoption has been granted but without first obtaining a formal order from a Maryland court permitting the transfer of the property.

I.

On September 10, 1999, a Maryland State Police trooper stopped a car traveling northbound on I–95 in Cecil County for tailgating. After conducting several sobriety tests on the vehicle's sole occupant, William DeSantis, Jr., the trooper determined that DeSantis had been driving while intoxicated and arrested him. During a search of the car, incident to the arrest, the trooper discovered a substantial amount of marijuana as well as a tan suitcase containing $20,000 in cash. The trooper charged DeSantis with possession with intent to distribute, possession of marijuana, and possession of paraphernalia. Pursuant to authority granted the State Police in

---

1. Unless otherwise indicated, all future statutory references to § 297 will be to Md.Code (1957, 1996 Repl.Vol., 1999 Cum.Supp.), Art. 27, § 297. Art. 27 was repealed and recodified without substantive change as Md.Code (2001), § 12–101 through § 12–505 of the Criminal Procedure Article. Throughout this opinion, we will refer to the statute as it was designated at the time of the forfeiture.

§ 297(d) and (e), the trooper seized the $20,000 as illicit drug proceeds. The money was then deposited into an account controlled by the State Police.

On September 30, 1999, the Office of the Attorney General of Maryland sent a letter to the DEA advising the federal agency that "the State of Maryland does not plan to initiate forfeiture action on [the $20,000 seized]" and "requesting that the Drug Enforcement Administration handle the forfeiture proceedings concerning the seizure of this currency." On October 8, 1999, the DEA granted the State's request for federal adoption and instructed the State Police to send a certified check in the amount of $20,000 to its office in Washington, D.C. The State Police, without obtaining any court authorization, complied with the DEA's instruction. Upon receipt of the check in Washington, the DEA assigned the currency an identification and case number and initiated federal administrative forfeiture proceedings.

On November 30, 1999, the DEA provided DeSantis with notice of the federal seizure of the property as required by federal law. DeSantis did not contest the federal forfeiture. On March 14, 2000, the money was forfeited to the United States pursuant to 21 U.S.C. § 881. On April 12, 2000, the DEA paid to the State Police an amount representing 80% of the amount forfeited, minus administrative expenses.

Fourteen months after the federal forfeiture had been completed, on May 22, 2001, DeSantis filed a complaint against the State in the Circuit Court for Baltimore County, alleging that the State Police unlawfully had deprived him of $20,000. Before the Circuit Court, the parties stipulated to the facts and moved for summary judgment. Judge J. Norris Byrnes granted the State's motion for summary judgment. DeSantis noted a timely appeal to the Court of Special Appeals, and we granted certiorari on our own initiative to consider whether the State Police may deliver custody of such seized property to the DEA without first obtaining an order from a Maryland court. 380 Md. 617, 846 A.2d 401 (2004).

## II.

■ The United States may adopt seizures of property initially seized by non-federal law enforcement agencies and declared by federal statute subject to forfeiture. *See Dodge v. United States,* 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392 (1926); *United States v. One Ford Coupe Auto.,* 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926). Such adoptions cloak the initial seizure with federal authority, as if federal, not state, officials had made the seizure. *See One Ford Coupe Auto.,* 272 U.S. at 325, 47 S.Ct. at 155; *Madewell v. Downs,* 68 F.3d 1030, 1039 (8th Cir.1995). With respect to the illicit drug trade, the Attorney General of the United States is authorized to cooperate with local and state police departments in combating the traffic of controlled substances and in suppressing drug abuse. *See* 21 U.S.C. § 873. To facilitate such cooperation, the United States Department of Justice has established so-called "equitable sharing programs" whereby local or state officials request that the DEA adopt the seizure of and commence federal forfeiture proceedings against property subject to forfeiture under 21 U.S.C. § 881. After the federal forfeiture process has been completed and the property forfeited to the United States, the DEA disburses a large portion of the forfeited property back to the local or state law enforcement authority, minus administrative expenses. *See* 21 U.S.C. § 881(e)(1)(A). This practice of "pot-splitting" between the federal and state law enforcement authorities is widespread and well-established.[2] *See, e.g., In re United States Currency,*

---

**2.** In *Cavaliere v. Town of North Beach,* 101 Md.App. 319, 646 A.2d 1058 (1994), the Court of Special Appeals explained "pot-splitting" as follows:

"The 'pot-splitting' noted in *Johnson* [*v. Johnson,* 849 P.2d 1361, 1362 (Alaska 1993) ]is specifically allowed by 21 U.S.C. § 881(e)(1)(A), which authorizes the Attorney General, among other things, to transfer forfeited property 'to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property.' The ground rules for the splitting are set forth in the Department of Justice Guide cited above. The split is based on the net proceeds of the forfeiture, after deduction of Federal expenses, and the degree of pre-seizure activity performed by the State or local agency."

*$844,520.00,* 136 F.3d 581, 583 (8th Cir.1998) (per curiam) (Loken, J., concurring); *United States v. Winston–Salem/Forsyth County Bd. of Educ.,* 902 F.2d 267, 269–70 (4th Cir.1990); *Johnson v. Johnson,* 849 P.2d 1361, 1362 (Alaska 1993); Franz J. von Kaenel, *Missouri Ups the Ante in the Drug Forfeiture "Race to the Res,"* 72 Wash. U.L.Q. 1469, 1473 (Fall 1994) (noting that "[a]s of April 1993, over $1.1 billion had been distributed to more than 3000 agencies through equitable sharing programs").

The legality of equitable sharing programs in the State of Maryland was addressed in *Cavaliere v. Town of North Beach,* 101 Md.App. 319, 646 A.2d 1058 (1994). In that case, the issue was whether a local police department had the authority to circumvent the state forfeiture procedure set forth in § 297 and opt instead for federal forfeiture procedures by requesting federal adoption of the local officer's seizure. The Court of Special Appeals held that following the seizure of a motor vehicle pursuant to § 297 by a local police officer, the local police department had the authority *either* to proceed under the forfeiture proceedings set forth in § 297 *or* to request federal adoption and have the federal authorities initiate forfeiture proceedings under the federal forfeiture statute, 21 U.S.C. § 881.[3] *Id.* at 330, 646 A.2d at 1063.

Petitioner does not challenge the holding of *Cavaliere* but presents the more subtle argument that the Department of

---

**3.** The State forfeiture procedure for seized monies in § 297 is more burdensome than the federal forfeiture procedure found in 21 U.S.C. § 881. This is the obvious reason why the State Police might prefer, in many instances, federal adoption over State forfeiture proceedings. For example, under § 297, forfeiture proceedings against money must be initiated by the Attorney General, or some other officer of appropriate jurisdiction, and cannot be delegated to another authority. § 297(d)(2). A formal complaint must be filed in the district or circuit court, accompanied by an affidavit, in accordance with the procedural formalities of Md. Rules 2–121 to 2–122 or 3–131(a) to (c). *Id.* In contrast, under 21 U.S.C. § 881, forfeiture proceedings are much less burdensome for amounts under the statutory minimum, primarily because they are administrative in nature and do not require all the formal procedures afforded a judicial forfeiture proceeding. *See* 21 C.F.R. §§ 1316.71–1316.81.

State Police, after federal adoption has been duly authorized by the DEA and the Maryland Attorney General, is bound to abide by § 297(e), which, petitioner argues, requires a so-called "judicial turnover order" to validate the transfer. Petitioner's theory is not novel, and other courts, both state and federal, have considered it. *See, e.g., Madewell,* 68 F.3d at 1040–44; *United States v. One 1987 Mercedes Benz Roadster,* 2 F.3d 241, 243–45 (7th Cir.1993); *Scarabin v. DEA,* 966 F.2d 989, 993–94 (5th Cir.1992); *United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 44–45 (1st Cir.1991); *United States v. One 1979 Chevrolet C–20 Van,* 924 F.2d 120, 122–23 (7th Cir.1991); *Winston–Salem,* 902 F.2d at 272; *United States v. $490,920 in United States Currency,* 911 F.Supp. 720, 724 (S.D.N.Y.1996); *In re $3,166,199,* 337 Ark. 74, 987 S.W.2d 663, 668 (1999); *Commonwealth v. Rufo,* 429 Mass. 380, 708 N.E.2d 947, 949 (1999); *Johnson,* 849 P.2d at 1364–65.

Petitioner argues that the State Police could not deliver custody of the seized property to the federal government without complying with the statutory authority by which the property was seized.[4] He contends that the Maryland statute authorizing the seizure of his property, § 297, requires the seizing authority to obtain a court order, a "turnover order," before relinquishing custody of the property to the federal government.

The State disagrees on two grounds. First, the State, relying on *Cavaliere,* argues that the State Police lawfully could proceed under either Maryland or federal law when it decided to subject the property to forfeiture. Because the State Police decided ultimately to proceed under federal forfeiture law, § 297, according to the State, "never came in to play," and thus, the State Police was not required to comply with its provisions, including any requirement for a turnover order. Second, the State argues that even if the State Police

---

4. In the Circuit Court, petitioner also argued several other issues relating to the deprivation of the property, but those issues are, as conceded by petitioner's counsel at oral argument before this Court, either subsumed by the § 297 issue or abandoned.

were required to comply with the provisions in § 297(e) before delivering custody of the property, the State Police did comply because the plain language of the statute indicates a turnover order is not required.

### III.

We begin by considering the State's contention that the State Police had authority to circumvent § 297(e) entirely when it opted to pursue federal adoption and allow the DEA to forfeit the money under federal law. The State's primary argument is that it is not bound by the strictures of § 297 because when the State Police opted for federal adoption and federal forfeiture, the State statute "never came into play." We disagree.

The State Police is not free to circumvent State law altogether when it decides to forgo State forfeiture proceedings in favor of federal forfeiture proceedings. When the State Police seized the cash in petitioner's car, it was operating under State, not federal, law, because the State trooper seized the property pursuant to the statutory authority granted him under § 297. Furthermore, when the State Police took custody of the property, it did so pursuant to State law, without any federal involvement whatsoever. At the time of the seizure and during the State Police's custody of the property, the State Police was operating under § 297, not 21 U.S.C. § 881. There is no evidence that federal authorities were involved in, or even had knowledge of, the seizure of petitioner's property. Thus, whatever authority the State Police exercised in seizing and detaining the property emanated from State law, *see* § 297(d)(iv),[5] and not from the auspices

---

**5.** Section 297(d) provides, in relevant part:

"*Seizure of property subject to forfeiture.*—(1) Any property subject to forfeiture under this subheading may be seized upon process issued by any court having jurisdiction over the property except that seizure without such process my be made when:
\* \* \*

of federal authority. Because the property was "taken or detained under [§ 297]," § 297(e) is applicable to the State Police. Indeed, almost all of the cases having considered this issue have assumed that state authorities cannot avoid their own state laws when they transfer the property to federal officials. *See, e.g., In re United States Currency, $844,520.00,* 136 F.3d at 583–84 (Loken, J., concurring); *One 1987 Mercedes Benz Roadster,* 2 F.3d at 243–44; *One 1979 Chevrolet C-20 Van,* 924 F.2d at 122–23; *Johnson,* 849 P.2d at 1363; *In re $3,166,199,* 987 S.W.2d at 667. *But see Madewell,* 68 F.3d at 1040–43; *Winston–Salem,* 902 F.2d at 272–73. The U.S. Department of Justice has also urged deference to state law in this area. *See In re United States Currency, $844,520.00,* 136 F.3d at 583–84; United States Department of Justice, *Asset Forfeiture Law and Practice Manual,* 2–21 to 2–22 (June 1998). We are in accord with these cases, and hold that the State Police cannot avoid the strictures of § 297(e) merely by asserting its right to request federal adoption and forfeiture under *Cavaliere.*

## IV.

Petitioner maintains that § 297(e) requires the State Police to obtain a turnover order from a Maryland court before it delivers custody of seized property to the federal government. Petitioner claims that the section, by its plain language, grants to a Maryland court exclusive authority to dispose of any seized property. We disagree.

Section 297(e) of Article 27 provides as follows:

"*Seized property not repleviable; sealing and removal of seized property.*—Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the seizing agency subject only to the orders, judgments, and decrees of the court or the official having

---

(iv) There is probable cause to believe that the property has been used or intended to be used in violation of this subheading [Health—Controlled Dangerous Substances]."

jurisdiction thereof. Whenever property is seized under the provisions of this subheading, the seizing agency may:

(1) Place the property under seal; and

(2) Remove the property to a place designated by the court."

Two initial observations can be made from a reading of this section. First, § 297(e) limits the seizing agency's options for disposal of the property. It may either place it under seal or remove it to a place designated by the court in whose jurisdiction the property resides. Those actions appear from the statute to be the only ones a seizing agency may execute on property seized pursuant to § 297. While the seizing agency has limited powers over the seized property, other officials are not so limited. Section 297(e)'s plain language indicates, contrary to petitioner's assertion, that a court is *not* the only entity to whom the property is subject. Section 297(e) states that the seized property shall stay within the custody of the seizing agency—here, the State Police, *see* § 297(a)(13)—"subject only to the orders, judgments, and decrees of the court *or the official having jurisdiction thereof.*" The "official having jurisdiction thereof" obviously refers to someone other than a judge on a Maryland court.

Although § 297(e) does not explicitly state who this official is, a careful reading of the statute leads to the conclusion that the official is a person who has direct authority over the seizing agency and who is granted authority to dispose of the property in other provisions of the statute. For example, § 297(j) provides that the "forfeiting authority" [6] may determine, independent of the seizing agency, that a motor vehicle

---

**6.** Section 297(a)(5) defines "forfeiting authority" as follows:

"(i) 'Forfeiting authority' means the office or person designated, from time to time, by agreement between the State's Attorney for a county and the chief executive officer of the governing body having jurisdiction over the assets subject to forfeiture.

"(ii) The Attorney General or the Attorney General's designee when the seizing agency is an instrumentality of the State, may, by agreement with any State's Attorney, or county or municipal attorney, designate an office or person as forfeiting authority to act on behalf of the State regarding any assets subject to forfeiture by the State."

was wrongfully seized and that it should be returned to the owner. This determination operates independent of any judicial authority, and no court order is required to surrender the property back to the owner. Indeed, it is arguable that a forfeiting authority's decision to *return* seized property is not reviewable at all by a court. *Cf.* § 297(k)(1) (providing for judicial review over forfeiting authority's refusal to surrender vehicle to owner or decision to pursue forfeiture proceedings, but silent on judicial review over decision to return vehicle); *State v. 1982 Plymouth*, 67 Md.App. 310, 319–20, 507 A.2d 633, 637–38 (1986) (rejecting *de novo* review over police officer's determination to seize automobile and recommend forfeiture pursuant to statute). Thus, in § 297(j), we have an example of an official who may surrender property seized, and take it out of the custody of the seizing agency, without receiving permission from a court. A similar example occurs in § 297(d)(3)(i), which requires surrender of seized currency back to the owner when forfeiture proceedings are not instituted within 90 days. There is again no mention of a court order to validate the surrender of the property.[7] These provisions would seem to defy petitioner's contention that a court order is necessary for the seizing agency to lawfully relinquish custody of the property.

These examples show that § 297(e), read in context, limits the seizing agency's ability to deliver custody of seized property, but does not speak to the authority of other officials with jurisdiction over the property. Indeed, that is the only logical understanding of the qualification that the property shall be "subject to the orders, judgments, and decrees ... of the official having jurisdiction thereof." Were we to accept petitioner's contention that the only way to deprive the seizing

---

7. Although § 297(d)(3)(i) requires the owner to "petition" for return of the money, it is clear that this does not mean a formal petition, as in a court filing. Compare the current statutory codification of § 297(d)(3)(i) in Md.Code (2001, 2003 Cum.Supp.), § 12–304(c)(2) of the Criminal Procedure Article ("If the State or political subdivision does not file proceedings about money within the 90–day period, the money seized under this title shall be returned to the owner on *request* by the owner" (emphasis added)).

agency of custody is to get a court order, then § 297(e) essentially would serve to hamper a forfeiting authority's ability to obey § 297(j). As explained *infra*, § 297(j) clearly contemplates no judicial intervention over the forfeiting authority's ability to return mistakenly seized vehicles. It would make no sense to read § 297(e) as creating such an implicit restriction on the forfeiting authority, and we do not interpret § 297(e) to restrict entities, other than the seizing agency, to whom § 297 grants authority over the property and forfeiture proceedings.[8] *See* § 297(a)(2), (a)(5) and (a)(6); *cf.* § 297(b)(6) (vesting all "rights, title and interest in and to the money ... in and to Baltimore City or the county in which it was seized if it was seized by a county or Baltimore City law enforcement agency, ... the municipal corporation, if seized by municipal authorities, or, if it was seized by State law enforcement authorities, the State").

Under § 297(d)(2)(ii), the State Attorney General has the authority to initiate forfeiture proceedings against property seized by the State Police in the form of money.[9] This authority includes the discretion *not* to institute forfeiture proceedings, and, under the holding of *Cavaliere*, it also includes the authority to request federal adoption. None of this authority is circumscribed by the restrictions of § 297(e) regarding the custodial placement of the property, which apply only to the seizing agency.

---

8. Nor do we accept the argument that although the forfeiting authority or the Attorney General is not bound by § 297(e), the State Police is so bound, and that therefore, the State Police was required to obtain the court order, notwithstanding the Attorney General's authorization of the transfer. Such a strained interpretation would serve only as a back-door equivalent to restraining the powers of the Attorney General in a manner not at all contemplated by § 297(e). It would, in effect, nullify the language "or the official having jurisdiction thereof," a result highly disfavored by the canons of statutory interpretation.

9. While § 297(a)(5)(ii) permits the Attorney General, by agreement with local officials, to designate a forfeiting authority to act on his behalf with respect to seized property other than money, when the property seized is money, that authority cannot be so delegated. *See* § 297(d)(2)(ii); § 297(h)(1).

Our holding is in accord with a similar case from a federal district court in Illinois. In *United States v. $62,600.00,* 899 F.Supp. 378 (N.D.Ill.1995), the district court considered the same argument presented by petitioner in light of two earlier cases, *One 1987 Mercedes Benz Roadster,* 2 F.3d at 243, and *One 1979 Chevrolet C–20 Van,* 924 F.2d at 122–23, which held that the Illinois statute required a turnover order from a court prior to transferring custody to the federal government for adoptive forfeiture proceedings. The district court noted that "those cases were grounded in the lack of authority for such a transfer under *state* law, and since then the Illinois General Assembly has amended the relevant statutes ... to give State's Attorneys the power, (concurrently with the state circuit courts) to dispose of the contraband." *$62,600.00,* 899 F.Supp. at 379.

The version of the statute considered by *One 1987 Mercedes Benz Roadster* and *One 1979 Chevrolet C–20 Van* had provided: "Property taken or detained under this Section shall not be subject to replevin, but is deemed to be in the custody of the Director subject only to the order and judgments of the circuit court having jurisdiction over the forfeiture proceedings." *One 1979 Chevrolet C–20 Van,* 924 F.2d at 122 (emphasis omitted); *see One 1987 Mercedes Benz Roadster,* 2 F.3d at 244. This provision was amended to conform to its current version by inserting "and the decisions of the State's Attorney under the Drug Asset Forfeiture Procedure Act" at the end of the sentence. *See* 720 Ill. Comp. Stat. 570/505(d) (2003); Illinois Public Act 86–614, § 4 (1991). The amended version was deemed by the district court to permit transfer of the property without a court order. *$62,600.00,* 899 F.Supp. at 379. We think § 297(e), which substantively is identical to the amended version of the Illinois statute, also permits such a transfer without a turnover order.

In the case *sub judice,* the Attorney General declined to pursue forfeiture proceedings under § 297. It had authority to do so under § 297(d)(2)(ii). The Attorney General also had the authority to request for federal adoption of the

seizure. Finally, because the Attorney General was not bound by § 297(e) in transferring the property, he had the authority to deliver custody of currency to the DEA, through the State Police, without obtaining a court order. All of these actions were permitted by the State forfeiture statute.

Because § 297(e) does not, contrary to petitioner's assertion, require a turnover order when an official having jurisdiction over the property has ordered a transfer of the money to the DEA, the State Police acted lawfully.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

JOHN C. ELDRIDGE, Judge (retired, specially assigned), dissenting:

I dissent.