PITTMAN, Judge.
The City of Montgomery (“the City”) appeals from a summary judgment in a quasi in rem action, ordering it to return to Sylvester Vaughn and Terrance Caffey cash that had been seized from them by officers of the Montgomery Police Department (“the MPD”). We reverse.

Facts and Procedural History

On February 2, 2007, Caffey was stopped by an MPD officer for a traffic violation. A warrantless search of Caf-fey’s vehicle revealed approximately $8,800 in cash and a controlled substance. Caffey was arrested and charged with trafficking in drugs, a violation of § 13A-12-213, Ala. Code 1975. On February 7, 2007, Montgomery police officers obtained a warrant from the Montgomery Municipal Court to search Caffey’s residence. Upon execution of the warrant, MPD officers seized $17,875 in cash from the residence and $3,500 from a vehicle in the driveway.
On August 6, 2008, Vaughn was arrested by an MPD officer for distribution of a controlled substance, a violation of § 13A-12-211, Ala.Code 1975. During a search incident to Vaughn’s arrest, the officer seized $6,207 in cash from Vaughn.
On August 17, 2010, Vaughn filed an action against the City in the Montgomery Circuit Court, alleging that, after the seizure of his cash, the MPD had failed to notify state officials to institute prompt proceedings to forfeit the property to the State as required by § 20-2-93(e), Ala. Code 1975; that, instead, the MPD had transferred the property to the Drug Enforcement Administration (“the DEA”) to commence federal forfeiture proceedings; and that, at the conclusion of the federal forfeiture proceedings, the DEA had returned 80 to 90 percent of the forfeited cash to the MPD and had kept the remainder as an administrative fee. Vaughn further alleged that, because a municipality has no standing to institute a forfeiture proceeding under state law, the MPD had conspired with the DEA to have the property forfeited to the United States, thereby bypassing state law and “fil[ling its] own coffers with the spoils.” Based on those allegations, Vaughn brought claims individually and on behalf of a putative class of “all individuals whose property was seized by any MPD officer acting in his capacity as such and subsequently turned over to the DEA, U.S. Customs, or Federal Bureau of Investigation for forfeiture purposes.”
Vaughn amended the complaint several times. On December 2, 2010, Vaughn added Caffey’s claim against the City, based on allegations similar to those that Vaughn had previously made — i.e., that the MPD had seized Caffey’s cash and turned it over to the DEA to commence federal forfeiture proceedings and that, at the conclusion of the federal forfeiture proceedings, the DEA had returned the majority of the cash to the MPD and had kept the remainder as an administrative fee. Vaughn also added the claims of Ronald Kidd and Teo- *999 dosio Arroyo Martinez against defendants F.A. “Bubba” Bingham, the director of the Alabama Department of Public Safety (“the DPS”), and Alabama State Trooper Darrell Seymour (Bingham and Seymour are hereinafter referred to collectively as “the DPS defendants”).[1]
The City moved to dismiss the claims of Vaughn and Caffey, insisting that the claimants had failed to state a claim upon which relief could be granted and arguing, among other things, that this court’s decision in Green v. City of Montgomery, 55 So.3d 256 (Ala.Civ.App.2009) (holding that state court had properly exercised in rem jurisdiction in an action seeking return of seized currency because the claimants had filed that action before the currency had been transferred to the DEA and the DEA had adopted the seizure), barred the relief sought by the claimants because their state-court action seeking return of the cash had been filed after the claimants’ cash had been transferred to the DEA and federal forfeiture proceedings had been commenced. The circuit court denied the City’s motion to dismiss, and the City answered the complaint, asserting as to the claims of Vaughn and Caffey, among other defenses, collateral estoppel.
The parties filed cross-motions for a summary judgment. In a brief supporting its motion as to Vaughn’s claim, the City asserted that Vaughn had “already argued to no avail before the United States District Court for the Middle District of Alabama that the state court and not the federal court had exclusive jurisdiction over the currency seized from him,” citing United States v. Six Thousand Two Hundred Seven Dollars ($6,207.00) in United States Currency, (No. 2:08-CV-999-MEF, July 20, 2009) (M.D.Ala.2009) (not reported in F.Supp.2d). On April 24, 2012, the circuit court granted Vaughn and Caffey’s summary-judgment motion and denied the City’s motion. The judgment states: “Neither party has offered any facts which may be considered by this court as to any transfer of either Caffey’s or Vaughn’s property to any federal agency for further proceedings. There is no record before this court of the institution of federal forfeiture proceedings against either Caffey’s or Vaughn’s property.” The court concluded that the Montgomery Circuit Court had exclusive in rem jurisdiction over Vaughn’s and Caffey’s property by -virtue of its having been seized pursuant to § 20-2-93(b), Ala.Code 1975.

Standard of Review

“An order granting or denying a summary judgment is reviewed de novo, applying the same standard as the trial court applied. American Gen. Life & Accident Ins. Co. v. Underwood, 886 So.2d 807, 811 (Ala.2004). In addition, ‘[tjhis court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.’ Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially *1000 undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review. Carter v. City of Haleyville, 669 So.2d 812, 815 (Ala.1995).”
Continental Nat’l Indem. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005).

Discussion

On appeal, the City argues that the circuit court erred in ordering it to return the property seized from Vaughn and Caf-fey because, it asserts, “the DEA had ah ready gained control over the currency and completed administrative forfeiture proceedings before this action was filed by Vaughn and Caffey in [Montgomery] Circuit Court on August 17, 2010, and December 2, 2010, respectively.”
Vaughn and Caffey take issue with that assertion, contending that the circuit court was correct in stating that it had been presented with no facts indicating that property seized from Vaughn and Caffey had been transferred to a federal agency for federal forfeiture proceedings before Vaughn and Caffey had filed their action in state court seeking return of the property. Vaughn and Caffey insist that the City’s assertion is based only upon the allegations of their complaint and the City’s response to the complaint, but, they maintain, “[a]IIegations are not facts.”
Caffey ⅛ Claim
Facts alleged in a complaint and not denied in the answer are taken as true. See Woods v. Wood, 219 Ala. 523, 524, 122 So. 835, 836 (1929). Moreover, the City did more than simply fail to refute the factual allegations of the complaint; it affirmatively acknowledged the truth of those allegations. There was, in the present case, simply no dispute as to the fact that, before Caffey brought a state-court action for return of the cash seized from him, the cash had been transferred to the DEA for federal forfeiture proceedings and that, at the conclusion of those proceedings, the DEA had returned the majority of the cash to the MPD and had kept the remainder as an administrative fee.
The “equitable sharing” of forfeited funds between federal and state or local entities to which Caffey referred in his pleadings does not occur until after a federal court has entered a final judgment forfeiting the property to the United States. See De Santis v. State, 384 Md. 656, 657, 866 A.2d 143, 144 (2005). The applicable statute, 21 U.S.C. § 881(e)(1)(A), provides:
“(e) Disposition of forfeited property
“(1) Whenever property is civilly or criminally forfeited under this subchap-ter the Attorney General may—
“(A) ... transfer the property to any Federal agency or to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property.”
In the present case, the parties’ disagreement was not as to the existence of the underlying facts, but as to the legal import of those facts, namely: whether the MPD’s transferring the property seized from Caffey to a federal agency for federal forfeiture proceedings barred Caffey’s later state-court action seeking return of the property. The Supreme Court of Alabama definitively answered that question in Ervin v. City of Birmingham, 137 So.3d 901 (Ala.2013).
In Ervin, our supreme court held that a state-court action seeking the return of property that had previously been seized by municipal police officers, transferred to the DEA, and forfeited to the United States “amounts to a collateral attack in state court on a final judgment entered by a federal court.... As the successor in *1001 title to the forfeited property, the [municipality] is entitled to the res judicata benefit of that final judgment.” 137 So.3d at 905.
Caffey contends that the forfeiture of his property to the United States was not authorized because (a) the Montgomery Circuit Court had exercised preexisting in rem jurisdiction over the property by virtue of the Montgomery Municipal Court’s issuance of the warrant for the search whose execution resulted in the seizure of the property and (b) the MPD had no authority to transfer the property to the DEA. Rejecting the same arguments in Ervin, our supreme court stated:
“Even if all these contentions were correct, they amount only to an attack on the authority of the federal district court to exercise jurisdiction over the res in an in rem action, not an attack on the subject-matter jurisdiction of the federal court over a forfeiture action brought under federal law. As such, they come too late and are being advanced in the wrong court. See Porsche Cars North America, Inc. v. Porsche.net, 302 F.3d 248, 256 (4th Cir.2002) (distinguishing between objections to subject-matter jurisdiction and objections to a court’s exercise of jurisdiction over the res in an in rem action, and explaining that, as with in personam jurisdiction, ‘in ... civil forfeiture cases, for years courts have held that objections to in rem jurisdiction may be waived’ and citing cases in support); United States v. Nineteen Thousand Eight Hundred Fifty Five ($19,855.00) Dollars in United States Currency (No. 2:12-CV-146-WKW, Nov. 19, 2012) note 6 and accompanying text (M.D.Ala.2012) (not selected for publication in F.Supp.2d) (explaining that objections to in rem jurisdiction may be waived if not timely asserted).”
137 So.3d at 904-05 (emphasis added). Based on the authority of Ervin, the judgment of the Montgomery Circuit Court with respect to Caffey’s claim is reversed, and the cause is remanded with instructions to enter a judgment in favor of the City.

Vaughn’s Claim

Although the unrefuted allegations of the complaint regarding Vaughn’s claim would normally make further inquiry into the underlying facts unnecessary, this court cannot ignore two decisions of the United States District Court for the Middle District of Alabama pertaining to the federal administrative-forfeiture action against the currency seized from Vaughn — United States v. Six Thousand Two Hundred Seven Dollars ($6,207.00) in United States Currency, (No. 2:08-CV-999-MEF, July 20, 2009) (M.D.Ala.2009) (not reported in F.Supp.2d) (hereinafter cited as “$6,207-1”), and United States v. Six Thousand Two Hundred Seven ($6,207) Dollars in United States Currency, 757 F.Supp.2d 1155 (M.D.Ala.2010) (hereinafter cited as “$6,207-11 ”).
In $6,207-1, which the City cited in its brief in support of its summary-judgment motion, the following facts appear:
“Sometime between August 6, 2008, and September 8, 2008, Montgomery Police officers transferred the ... currency to the DEA for forfeiture purposes. On October 7, 2008, Vaughn filed a claim asserting ownership of the ... currency.
“On December 17, 2008, the United States filed a verified complaint for forfeiture in rem.”
Id. On January 8, 2009, the federal forfeiture complaint was served on Vaughn’s counsel (who is appellate counsel for Vaughn and Caffey in the instant case). On January 11, 2009, Vaughn, acting through the same counsel, filed a motion to dismiss the federal forfeiture complaint based on the following grounds: (a) that *1002 the federal district court was precluded from exercising in rem jurisdiction over the property because, Vaughn maintained, the Montgomery Circuit Court had exercised preexisting in rem jurisdiction over the property pursuant to § 20-2-93(b), Ala.Code 1975, and (b) that the MPD had no authority to transfer the property to the DEA.
In a memorandum opinion issued on July 20, 2009 (1 year and 28 days before Vaughn filed his state-court action for return of the property on the same grounds), the federal district court in $6,207-1 addressed, and rejected, both arguments. That court stated:
“[Vaughn argues that] when the Montgomery Police seized the ... currency, in rem jurisdiction vested in the Circuit Court of Montgomery County. Therefore, the argument continues, because it is well established that ‘the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other,’ Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935), this Court lacks jurisdiction.
“Vaughn’s argument fails because of the doctrine of adoptive forfeiture. ‘[U]nder the “adoptive forfeiture” doctrine, the United States’ adoption of, the State’s seizure of [the plaintiffs’] cash has the same effect as if the government had originally seized the currency.’ U.S. v. $119,000 in U.S. Currency, 793 F.Supp. 246, 249 (D.Haw.1992). Adoptive forfeiture was incorporated from the common law into American jurisprudence by Justice Story in Taylor v. United States, 3 How. (44 U.S.) 197, 205, 11 L.Ed. 559 (1845):
“ ‘At the common law any person may, at his peril, seize for a forfeiture to • the government, and, if the government adopts his seizure, and institutes proceedings to enforce the forfeiture, and the property is condemned, he will be completely justified. So that it is wholly immaterial in such a case who makes the seizure, or whether it is irregularly made or not, or whether the cause assigned originally for the seizure be that for which the condemnation takes place, provided the adjudication is for a sufficient cause.’
[[Image here]]
“Vaughn argues principally that this Court lacks jurisdiction over the ... currency because jurisdiction first vested in the Circuit Court of Montgomery County, Alabama. It is well established that with respect to in rem proceedings ‘the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other.’ Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935); see [United States v.] Winston-Salem/Forsyth County [Bd. of Educ.], 902 F.2d [267,] 271 [(4th Cir.1990)]. However, under the doctrine of adoptive forfeiture, the date of the seizure dates back to the date the ... currency was initially seized by the Montgomery Police Department; it is as if federal authorities originally executed the seizure. See, e.g., U.S. v. Certain Real Property Known as Lot B Governor’s Rd., Milton, NH, 755 F.Supp. 487, 490 (D.N.H.1990); see also Jeffers v. U.S., 187 F.2d 498, 504 (D.C.Cir.1950) (‘The Government may adopt the seizure with the same effect as if it had originally been made by one duly authorized.’). As a consequence, jurisdiction vested in this Court at the time of the seizure, and the Circuit Court of Montgomery County never had in rem jurisdiction over the ... currency. See $119,000, 793 F.Supp. at 249; see also 3 Criminal Practice Manual § 107:67 (2009) (‘In an adoptive *1003 forfeiture, the state or local seizing agency turns the property over to federal authorities for forfeiture, and the state or local authorities do not take affirmative steps to seek forfeiture. After a federal agency adopts a state or local seizure, the property is deemed to have been seized by the federal government, and is thus subject to exclusive federal jurisdiction as of the date of seizure.’).
[[Image here]]
“Vaughn also argues that this Court does not have jurisdiction because the Montgomery Police Department had no authority to transfer the seized cash to the DEA under Alabama Code § 20-2-93(b). It is of little concern to this Court whether the Montgomery Police were acting pursuant to state law when they transferred the defendant currency to the DEA. Even assuming the transfer was ultra vires, the United States may adopt a seizure even when the person who seized the property had no authority to do so. Winston-Salem/Forsyth County, 902 F.2d at 272 (citing United States v. One Ford Coupe Auto., 272 U.S. 321, 325, 47 S.Ct. 154, 71 L.Ed. 279 (1926); United States v. One 1956 Ford Tudor Sedan, 253 F.2d 725, 727 (4th Cir.1958)). ‘It follows that the government may adopt a seizure where there was no authority to transfer the property.’ Winston-Salem/Forsyth County, 902 F.2d at 272.”
Acting through new counsel,[2] Vaughn appealed from the order denying his motion to dismiss, but, on December 22, 2009, the United States Court of Appeals for the Eleventh Circuit dismissed the appeal as having been taken from a nonfinal and nonappealable order, citing 28 U.S.C. § 1291. Former counsel then entered a notice of appearance on March 9, 2010, and resumed his representation of Vaughn.
On September 24, 2010, the federal district court in $6,207-11 issued a memorandum opinion and order granting the Government’s motion for a summary judgment; directing the Government to file a proposed decree of forfeiture on or before October 1, 2010; and stating: “The Court will enter a separate final judgment.” 757 F.Supp,2d at 1165. The federal district court entered a final judgment of forfeiture on October 15, 2010. Vaughn did not appeal from that judgment. In light of the foregoing facts, appellate counsel’s argument that the circuit court was presented with no facts indicating that property seized from Vaughn had been transferred to federal agents for federal forfeiture proceedings is, at the very least, disingenuous.
When Vaughn filed his state-court action on August 17, 2010, the doctrine of collateral estoppel or “issue preclusion” barred him from asserting that, because a state court had exercised preexisting in rem jurisdiction over the cash, the federal district court could not properly exercise in rem jurisdiction over the same property.
“The elements of collateral estoppel are: (1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties....
“... [T]he ‘same parties’ requirement is not strictly enforced if the party raising the defense of collateral estoppel, or the party against whom it is asserted, is *1004 in privity with a party to the prior action. The test for determining if two parties are in privity focuses on identity of interest.”
Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726 (Ala.1990) (citations omitted). The first and second elements of collateral estoppel are satisfied because the issue Vaughn sought to litigate in state court was identical to the issue he had actually litigated in $6,207-1, namely: whether the federal district court could properly exercise in rem jurisdiction over property that, Vaughn claimed, was subject to the preexisting in rem jurisdiction of the state court. The fourth element is also satisfied. Although the only “parties” to the federal forfeitui'e action were the United States and $6,207 in cash, Vaughn was a claimant to the cash and had the same interest in both the state and the federal proceedings. The United States in the federal-court action and the City in the state-court action had similar interests because each had a stake in having the cash forfeited.
The third element — whether the resolution of which court could properly exercise in rem jurisdiction over the cash was necessary to the judgment — is also satisfied, despite the fact that the federal district court’s order denying Vaughn’s motion to dismiss the forfeiture action was not a “final judgment” for purposes of appeal pursuant to 28 U.S.C. § 1291. See Restatement (Second) of Judgments § 13 (1982) (“The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), ‘final judgment’ includes any pri- or adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.”); Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80 (2d Cir.1961).
In Lummus, the United States Court of Appeals for the Second Circuit stated:
“Whether a judgment, not ‘final’ in the sense of 28 U.S.C. § 1291, ought nevertheless be considered ‘final’ in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. ‘Finality’ in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.”
297 F.2d at 89. The federal district court’s decision in $6.207-1 denying Vaughn’s motion to dismiss was not tentative. Vaughn’s motion was a dispositive one that, had it been granted, would have ended the litigation. The federal district court considered and thoroughly explained its reasons for rejecting Vaughn’s arguments. Although Vaughn had no right to appeal from the decision, there was no reason for permitting the issue to be reliti-gated in state court and very good reasons for not permitting it to be relitigated in state court, namely: the principles of federalism and comity.
The purpose of the rule of exclusive in rem jurisdiction, whereby “the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other,” Penn Gen. Cas. Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935), is to promote “the harmonious cooperation of federal and state tribunals,” Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939), “to prevent unseemly conflicts between the federal and state courts,” Mandeville v. Canterbury, 318 U.S. 47, 49, 63 S.Ct. 472, 87 L.Ed. 605 (1943), and to *1005 maintain “comity between courts; such harmony is especially compromised by state and federal judicial systems attempting to assert concurrent control over the res upon which jurisdiction of each depends,” United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1145 (9th Cir.1989).
After the federal district court entered a final judgment of forfeiture on October 15, 2010, and the City received its equitable share of the forfeited funds, the City, “[a]s the successor in title to the forfeited property, [was] ... entitled to the res judicata benefit of that final judgment.” Ervin, 137 So.3d at 904. That is so, notwithstanding the fact that Vaughn filed his state-court action on August 17, 2010, before the final judgment of forfeiture in $6,207-11 was rendered, because, “[f]or purposes of res judicata, the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect.” Restatement (Second) of Judgments § 14 (1982). Comment a. of § 14 of the Restatement explains:
“In order that a final judgment shall be given res judicata effect in a pending action, it is not required that the judgment shall have been rendered before that action was commenced. Nor is a judgment, otherwise entitled to res judi-cata effect in a pending action, to be deprived of such effect by the fact that the action in which it was rendered was commenced later than the pending action. It is merely required that rendition of the final judgment shall antedate its application as res judicata in the pending action.”
See also Alabama Power Co. v. Thompson, 250 Ala. 7, 12, 32 So.2d 795, 799 (1947), in which our supreme court stated:
“When two actions involving the same issue or issues, between the same parties or their privies, are pending at the same time, so that a final judgment in one would be res judicata or a bar in the other, when the judgment in one becomes final it may be urged in the other by appropriate proceedings, regardless of which action was begun first. It is the first final judgment although it may be in the second suit, that renders the matter res judicata in the other suit.”
The judgment of the Montgomery Circuit Court with respect to Vaughn’s claim is reversed, and the cause is remanded with instructions to enter a judgment in favor of the City.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. The DPS defendants ultimately moved to dismiss the claims against them for lack of subject-matter jurisdiction. The circuit court denied that motion, and the DPS defendants petitioned this court to issue a writ of mandamus. We granted their petition and issued the writ in Ex parte Bingham, 129 So.3d 1017, 1018 (Ala.Civ.App.2012) (holding that, because the allegations of the complaint demonstrated that "a federal court had already acquired (and exercised) in rem jurisdiction over the claimants' property at the time the claimants filed an in rem proceeding in the Montgomery Circuit Court, the circuit court had no jurisdiction”). Based on our supreme court's holding in Ervin v. City of Birmingham, 137 So.3d 901 (Ala.2013), in a separate opinion issued today, we disavow the legal rationale employed in Bingham. See Payne v. City of Decatur, [Ms. 2110919, April 19, 2013] — So.3d —, —(Ala.Civ.App.2013).

. The district court granted former counsel’s motion to withdraw from representing Vaughn on May 6, 2009.